56 P.3d 1252

STATE of Hawai'i, Plaintiff–
Appellee/Respondent–
Appellee,

v.

Mark A. BRANTLEY, Defendant–
Appellant/Movant–Appellant.

No. 22635.

Supreme Court of Hawai'i.

Oct. 25, 2002.

As Amended Oct. 25 & Nov. 1, 2002.

Kyle B. Coffman, on the briefs, Wailuku, for, defendant-appellant/movant-appellant.

Richard K. Minatoya, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee/respondent-appellee.

Opinion by MOON, C.J.

Defendant-appellant/movant-appellant Mark A. Brantley appeals from the second circuit court's May 25, 1999 order, entered by the Honorable Shackley Raffetto, presiding, denying his Hawai'i Rules of Penal Procedure (HRPP) Rule 35 "Motion to Reverse Conviction and Correct Illegal Sentence" for his 1994 conviction of carrying or use of firearm in the commission of a separate felony, in violation of Hawai'i Revised Statutes (HRS) § 134–6(a) (1993).[1] Brantley's motion was brought pursuant to this court's decision in *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998), wherein we held that a defen-

---

1. HRS § 134–6 provides in relevant part:

   **Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty.** (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection where the separate felony is:

   (1) A felony offense otherwise defined by this chapter;

   (2) The felony offense of reckless endangering in the first degree under section 707–713;

   (3) The felony offense of terroristic threatening in the first degree under section [707–716(1)(a)], [707–716(1)(b)], and [707–716(1)(d)]; or

   (4) The felony offenses of criminal property damage in the first degree under section 708–820 and criminal property damage in the second degree under section 708–821 and the firearm is the instrument or means by which the property damage is caused.

   (Bold emphasis and internal brackets in original.) Unless specified otherwise, references in this opinion to HRS § 134–6(a) are to the 1993 version of the statute quoted above.

dant could not be convicted of both the HRS § 134–6(a) violation and the separate, underlying felony. *See id.* at 3, 950 P.2d at 1203. According to *Jumila*, the remedy for the inappropriate conviction of both of these offenses, which Brantley sought, is to reverse the conviction for the offense which was of the lesser grade—in this case, the firearms offense. *See id.* at 4, 950 P.2d at 1204.

In his appeal, Brantley argues that the circuit court erred in denying his motion because the court incorrectly determined that *Jumila* does not apply retroactively to him. Plaintiff-appellee/respondent-appellee State of Hawai'i (State) answers that the circuit court correctly determined that *Jumila* does not apply retroactively to Brantley. Alternatively, the State contends that our holding in *Jumila*, barring conviction of both HRS § 134–6(a) and the separate felony, should be overruled. We affirm the circuit court's order because we agree with the State's alternative argument and overrule our holding in *Jumila* that a defendant cannot be convicted of both HRS § 134–6(a) and its separate felony.

## I. *BACKGROUND*

On November 4, 1994, Brantley was convicted of, *inter alia*, carrying or use of firearm in the commission of a separate felony and second degree murder, the separate felony in the former offense. On January 12, 1999, Brantley filed an HRPP Rule 35 motion seeking to reverse his conviction for the firearms offense. In opposition, the State argued that *Jumila*, a 1998 decision, should not be applied retroactively to Brantley's 1994 conviction. Among the arguments cited by the State was the fact that the legislature was considering passage of a bill that would "vitiate" *Jumila*. At the February 4, 1999 initial hearing on the motion, the circuit court continued the matter and requested supplemental briefing regarding the pending legislation and what, if any, impact the legislation would have on the court's determination re-

garding the question of retroactivity. On April 13, 1999, the Governor signed into law Act 12, which amended HRS § 134–6 to explicitly state that an individual could be convicted of both HRS § 134–6(a) and the separate felony. *See* 1999 Haw. Sess. L. Act 12, at 12.[2] Subsequently, the circuit court denied Brantley's motion, indicating that the 1999 amendment to HRS § 134–6 was an important factor in its decision not to apply *Jumila* retroactively. Brantley timely appealed.

## II. *STANDARDS OF REVIEW*

### A. *Statutory Interpretation*

The question whether a defendant can be convicted of both carrying or use of firearm in the commission of a separate felony and the separate felony is a question of statutory interpretation. We interpret statutes de novo. *See State v. Cornelio*, 84 Hawai'i 476, 483, 935 P.2d 1021, 1028 (1997) (citations omitted).

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
>
> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One ave-

---

**2.** Act 12 added the following language to HRS § 134–6(e):

A conviction and sentence under subsection (a) or (b) shall be *in addition to and not in lieu of any conviction and sentence for the separate felony;* provided that the sentence imposed

under subsection (a) or (b) may run concurrently or consecutively with the sentence for the separate felony.

1999 Haw. Sess. L. Act 12, § 1 at 12 (emphasis added).

nue is the use of legislative history as an interpretive tool.

> *Gray [v. Administrative Director of the Court,* 84 Hawai'i 138, 148, 931 P.2d 580, (1997) ] (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

> *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998))))) (some brackets and ellipses points added and some in original).

*State v. Rauch,* 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000).

### B. *Stare decisis*

With regards to overruling a previous decision of this court,

> we do not lightly disregard precedent; we subscribe to the view that great consideration should always be accorded precedent, especially one of long standing and general acceptance. Yet, it does not necessarily follow that a rule established by precedent is infallible. If unintended injury would result by following the previous decision, corrective action is in order; for we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, of the liability to error and the

advantages of review. As this court has long recognized, we not only have the right but are entrusted with a duty to examine the former decisions of this court and, when reconciliation is impossible, to discard our former errors.

*Francis v. Lee Enters., Inc.,* 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999) (internal citations, quotations, and bracket omitted); *see also State v. Jenkins,* 93 Hawai'i 87, 111–12, 997 P.2d 13, 37–38 (2000) (citing *Francis, supra* ); *Parke v. Parke,* 25 Haw. 397, 401 (1920) ("It is generally better to establish a new rule than to follow a bad precedent.").

### III. DISCUSSION

#### A. *Jumila and HRS § 134–6(a)*

The State makes two primary arguments in support of its request that we overrule our previous holding in *Jumila* that a defendant cannot be convicted of both HRS § 134–6(a) and the separate felony. The State asserts that the legislative history of a subsequent amendment to HRS § 134–6(a) clarifies that the legislature indeed intended to permit convictions of both offenses when it enacted HRS § 134–6(a). The State also claims that, in *Jumila,* this court considered only a portion of the legislative history of HRS § 134–6(a) when we concluded that the statute did not clearly indicate legislative intent to allow for conviction of both offenses.

Having considered the State's arguments, we agree that a defendant can be convicted of both HRS § 134–6(a) and the separate felony. We begin by reviewing our reasoning in *Jumila.*

This court's holding in *Jumila* was premised upon our conclusion that the separate felony was an included offense of HRS § 134–6(a). *See Jumila,* 87 Hawai'i at 3, 950 P.2d at 1203. An included offense is defined as one that is "established by proof of the same or less than all the facts required to establish the commission of the [greater] offense[.]" HRS § 701–109(4)(a).[3] We pointed out in *Jumila* that, "by virtue of the statutory definition of HRS § 134–6(a), the

---

3. HRS §§ 701–109(4)(b) and (c), which establish additional definitions of an included offense, are not germane here.

felony underlying an HRS § 134–6(a) charge will always be 'established by proof of the same or less than all the facts required to establish the commission of the' HRS § 134–6(a) offense." *Jumila*, 87 Hawai'i at 3, 950 P.2d at 1203. Consequently, we reasoned that "the felony underlying an HRS § 134–6(a) offense is, as a matter of law, an included offense of the HRS § 134–6(a) offense." *Id.*

After establishing that the separate felony was an included offense of HRS § 134–6(a), we noted that, pursuant to HRS § 701–109(1)(a),[4] a defendant may not be convicted of more than one offense if one of those offenses is included within another. *Id.* We acknowledged that "the legislature could, if it desired, create an exception to the statutory prohibition set forth in HRS § 701–109[,]" but concluded the legislature had not clearly done so when it enacted HRS § 134–6(a). *Jumila*, 87 Hawai'i at 4–5, 950 P.2d at 1204–05. Therefore, in order to resolve the apparent conflict between HRS § 701–109(1)(a) and Jumila's conviction for both HRS § 134–6(a) and the separate felony, we held that the lesser grade offense should be reversed. *See Jumila*, 87 Hawai'i at 4, 950 P.2d at 1204.

The basis for our conclusion that the legislature had not clearly expressed its intent to allow a conviction for both offenses was that we "found no indication[ ] in the language of HRS § 134–6(a) or the legislative history preceding its original enactment in 1990 to suggest" such intent. *Jumila*, 87 Hawai'i at 5, 950 P.2d at 1205. In this appeal, the State points to legislative history of a 1993 amendment to the statute—which established the version at issue in this case—and suggests that the legislature was aware that persons were being convicted of both offenses and approved of the practice. Moreover, the State urges that we may consider the subsequent legislative history of the 1999 amendment to the statute to ascertain the legisla-

ture's earlier intent in enacting HRS § 134–6(a). We now turn to these arguments.

### 1. 1993 Amendment to HRS § 134–6(a)

Preliminarily, we note that HRS § 134–6(a) is substantively the product of two legislative acts—the original enactment in 1990 and an amendment to the statute in 1993. *See* 1990 Haw. Sess. L. Act 195, § 2 at 422; 1993 Haw. Sess. L. Act 239, § 1 at 418. The language of HRS § 134–6(a) at issue in *Jumila*—the language that existed as a result of the 1993 amendment to the statute—is the same language at issue in this case.[5] The statute as originally enacted in 1990 read as follows:

[i]t shall be unlawful for a person to knowingly possess or intentionally use or threaten to use a firearm while engaged in the commission of a felony, whether the firearm was loaded or not, and whether operable or not.

1990 Haw. Sess. L. Act 195, § 2 at 422 (codified at HRS § 134–6(a) (Supp.1991)). In addition, section 2 of Act 195 specified that

[a]ny person violating this section by possessing, using or threatening to use a firearm while engaged in the commission of a felony shall be guilty of a class A felony.

*Id.* (subsequently codified at HRS § 134–6(e) (1993)).

In 1993, the legislature amended HRS § 134–6(a). After the amendment, HRS 134–6(a) appeared as follows (bracketed material was deleted from the 1990 version; underscored material was added by the 1993 amendment; bold emphasis in original):

**[Possession]** *Carrying* **or use of firearm in the commission of a** *separate* **felony; place to keep firearms; loaded firearms; penalty**

(a) It shall be unlawful for a person to knowingly [possess] *carry on the person or*

---

4. HRS § 701–109(1)(a) provides in relevant part:

When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if ... [o]ne offense is

included in the other, as defined in [HRS § 701–109(4).]

5. Although the text of *Jumila* refers to HRS § 134–6(a) (Supp.1996), *see Jumila*, 87 Hawai'i at 2, 950 P.2d at 1202, the version of the statute cited in *Jumila* is not different from HRS § 134–6(a) (1993), under which Brantley was convicted.

*have within the person's immediate control* or intentionally use or threaten to use a firearm while engaged in the commission of a *separate* felony, whether the firearm was loaded or not, and whether operable or not[.]; *provided that a person shall not be prosecuted under this subsection where the separate felony is:*

> *(1) A felony offense otherwise defined by this chapter;*
>
> *(2) The felony offense of reckless endangering in the first degree under section 707–713;*
>
> *(3) The felony offense of terroristic threatening in the first degree under section [707–716(1)(a) ], [707–716(1)(b) ], and [707–716(1)(d) ]; or*
>
> *(4) The felony offenses of criminal property damage in the first degree under section 708–820 and criminal property damage in the second degree under section 708–821 and the firearm is the instrument or means by which the property damage is caused.*

1993 Haw. Sess. L. Act 239, § 1 at 418. We acknowledge that the words of HRS § 134–6(a) do not expressly state that the legislature intended to abrogate the general prohibition in HRS § 701–109(1) against convictions of both HRS § 134–6(a) and the underlying, separate felony. However, the 1993 amendment illuminates an ambiguity in HRS § 134–6(a) with respect to this question. Because the statute is ambiguous, we turn to the legislative history for guidance. Moreover, if the legislature did intend to permit both convictions, we can presume the legislature understood the effect that its actions would have with respect to HRS § 701–109(1). *See generally Gardens at West Maui Vacation Club v. County of Maui,* 90 Hawai'i 334, 341, 978 P.2d 772, 779 (1999) (court presumed legislature to have been aware of, and repealed by implication, earlier law contrary to new enactment).

For present purposes, the relevant substantive change in HRS § 134–6(a) as a result of the 1993 amendment was the addition of a list of several offenses (designated in subsections (a)(1) through (a)(4)), for which prosecution under the statute was prohibited if the separate felony was one of the designated offenses. *See* HRS § 134–6(a), *supra* at 99 Hawaii at 466, 56 P.3d at 1255. The legislative rationale for prohibiting a conviction under the statute, when the underlying felony was among the small group of those designated, supports our interpretation that the legislature intended to *allow* dual convictions whenever the separate felony was *not* one of the designated offenses.

The rationale for excluding the designated separate offenses from the purview of HRS § 134–6(a) was "to clarify that [HRS § 134–6] was not intended to apply to certain felonies which already have enhanced penalties for identical conduct." Hse. Stand. Comm. Rep. No. 472, in 1993 House Journal, at 1163. Therefore, the 1993 amendment specifically prohibited prosecution under HRS § 134–6(a) when the separate felony was one of the "certain felonies." The Senate Judiciary Committee Majority report on the amendment states:

> According to the Public Defender, this bill *will correct the overreaching effect of section 134–6, which allows the prosecutor to apply this section to offenses that already have enhanced penalties* for the use of a firearm, such as terroristic threatening and reckless endangering, and to possessory gun offenses—a *result not contemplated by the Legislature* at the time of the provision's enactment in 1990 (Act 195).
>
> . . . .
>
> Your Committee finds that section 134–6(a) established a class A felony for the possession, use, or threatened use of a firearm in the commission of a felony. Creation of this offense was intended to recognize and *deter the heightened danger* presented when a firearm is involved in the commission of a felony such as burglary.
>
> Presently, an offender who uses a firearm in the commission of a felony can be charged with, *in addition to the underlying offense,* a class A felony under section 134–6(a) and therefore be subject to an enhanced penalty.
>
> However, your Committee finds that section 134–6(a) was not intended to per-

mit charging of a separate felony for use of a firearm *where the underlying felony involves a firearm and is classified as a felony for that reason alone.* Otherwise, the involvement of a single firearm would, in effect, be counted twice: once in the definition of the underlying felony and a second time in defining the separate felony.

Sen. Stand. Comm. Rep. No. 1217, in 1993 Senate Journal, at 1210 (emphases added). Finally, the Conference Committee report on the 1993 amendment also reiterates that:

> The purpose of this bill is to amend [HRS § 134–6] to clarify that this section was not intended to apply to certain felonies, *that already have enhanced penalties for identical conduct.*

Conf. Comm. Rep. No. 12, 1993 Senate Journal, at 745 (emphasis added).

In our view, the foregoing history is consistent with an interpretation of HRS § 134–6(a) that allows for *additional* prosecution and conviction under the statute whenever the underlying felony is any felony other than those for which prosecution is specifically excluded in the statute. As the senate report indicates in referring to the testimony of the Public Defender and the "overreaching" effect of HRS § 134–6(a), the legislature was aware that individuals were being charged with both HRS § 134–6(a) and the separate felony. *See* Sen. Stand. Comm. Rep. No. 1217, in 1993 Senate Journal, at 1210. Moreover, the statement in the report that "[p]resently, an offender who uses a firearm in the commission of a felony can be charged with, *in addition to the underlying offense,* a class A felony under HRS

§ 134–6(a) and therefore be subject to an enhanced penalty" further illustrates the legislature's awareness of the issue.[6] *Id.* (emphasis added). Yet the legislature chose to exclude from such dual prosecution and conviction only a certain category of limited offenses where the separate felony itself required proof of firearm involvement or commonly involved the use of a firearm.[7] The fact that, as the report states, the legislature had "not contemplated" the "overreaching effect" that persons might be convicted of both HRS § 134–6(a) and a separate felony, where the separate felony itself required proof of firearm involvement, implies that the legislature *was* contemplating that persons would be convicted of both HRS § 134–6(a) and the separate felony where the separate felony was one in which proof of firearm involvement was not required. Viewed in this context, the legislative intent becomes clear: when the legislature chose to exclude from consideration for dual prosecution and conviction only those offenses listed in subsections (1) through (4) of the statute, it intended to *continue* to allow dual prosecution and conviction in other contexts.

Moreover, we note that the senate standing committee report contains one additional provision that emphasizes the legislative intent to allow for dual convictions. Referring to the 1993 amendment to HRS § 134–6(a), the report states that

> [a] similar measure was passed by the Legislature in 1992 but was vetoed by the Governor. The Governor was concerned with terroristic threatening with a firearm against a public servant being excluded from the designation as a class A felony .... Your Committee finds that this bill

---

6. The understanding that both convictions were permitted would also explain the 1993 addition of the adjective "separate" when referring to the "separate" underlying felony in the title and text of the statute. *See* 1993 Haw. Sess. L. Act 239, § 1 at 418.

7. Although not all of the designated underlying felonies for which separate conviction is prohibited involve the use of a firearm, the legislative reports indicate that the legislature was considering scenarios whereby the use of a firearm commonly constitutes an element establishing the underlying felony. For example, the offenses listed that do not specifically include a firearm as an element constituting such offense include first

degree reckless endangering in violation of HRS § 707–713 (1993), which requires either conduct involving "widely dangerous means" or the intentional firing of a firearm and terroristic threatening in the first degree in violation of HRS §§ 707–716(1)(a), (b), or (d) (1993), which involve, respectively, the terroristic threatening of one individual on more than one occasion, or more than one individual on one occasion in a common scheme, or with the use of a dangerous instrument. These offenses, as do all of the other designated offenses which expressly contain a "firearm" element, commonly involve firearm use.

addresses the concerns expressed by the Governor in 1992.

Sen. Stand. Comm. Rep. No. 1217, in 1993 Senate Journal, at 1210. The report refers to the fact that one manner in which first degree terroristic threatening can be committed is by making terroristic threats against a public servant. *See id.* (referring to terroristic threatening under HRS § 707–716(1)(c)). In spite of the fact that other forms of first degree terroristic threatening were included in the list of designated separate felonies for which a defendant could not be prosecuted under HRS § 134–6(a), this particular form of terroristic threatening was omitted from the designated list. That is, the legislature decided to allow dual prosecution and conviction under HRS § 134–6(a) when the separate felony was first degree terroristic threatening of a public servant, in violation of HRS § 707–716(1)(c), but not allow dual prosecution and conviction when the separate felony was of other forms of first degree terroristic threatening, in violation of HRS §§ 707–716(1)(a), (b), or (d). This decision was made in response to the Governor's 1992 veto of the bill that did not contain this distinction and further evinces the legislature's knowledge of the fact that convictions of both offenses occurred and its intent to continue allowing the practice in circumstances not specifically excluded in the statute. *See* Sen. Stand. Comm. Rep. No. 1217, in 1993 Senate Journal, at 1210.

Considering together, then, the language of the statute and the legislative understanding embedded in the 1993 amendments that conviction of both offenses was permitted, we are convinced that the legislature intended to permit convictions of both HRS § 134–6(a) and the separate felony at the time of Brantley's conviction. Accordingly, we overrule our holding in *Jumila* that a defendant cannot be convicted of both HRS § 134–6(a) and the separate felony, except of course, as provided in the statute itself.[8]

### 2. 1999 Amendment to HRS § 134–6

In light of our decision to overrule *Jumila*, we need not consider, as the State urges, whether the subsequent legislative history of the 1999 amendment to the statute would shed further light on the legislature's earlier intent in enacting HRS § 134–6(a).

### B. *Retroactive Application of Jumila*

Notwithstanding our decision to overrule *Jumila*, we review Brantley's arguments to ensure that he was not prejudiced by the circuit court's decision. Brantley argues that the circuit court erred in denying his motion because there is no question that *Jumila* should have been applied retroactively to him based upon the fact that the appellant in *Jumila*, like Brantley, also sought "retroactive" relief via a HRPP Rule 35 petition. Brantley further contends that the circuit court should not have considered the effect of the 1999 legislation on his case, nor delayed ruling on his motion to do so. Finally, Brantley contends that another section of the 1999 amendment to HRS § 134–6(a) expressly prohibits his conviction of both offenses.

In light of our holding today, we need not address the circuit court's retroactivity analysis because we affirm its order on other grounds. *See Taylor–Rice v. State*, 91 Hawai'i 60, 73, 979 P.2d 1086, 1099 (1999) ("[T]his court may affirm a judgment of the trial court on any ground in the record which supports affirmance."); *State v. Taniguchi*, 72 Haw. 235, 240, 815 P.2d 24, 26 (1991) ("[W]here the decision below is correct[,] it must be affirmed by the appellate court[.]"). Moreover, our decision today effectively precludes "retroactive" application of *Jumila* in collateral proceedings because our decision is binding on this and all other collateral petitions addressing this issue that are currently pending or on direct review. *See State v. Jackson*, 81 Hawai'i 39, 51, 912 P.2d 71, 83 (1996) (Where a new rule of law is applied to the appellant in the case, "rather than limiting its application to future appeals, 'persuasive federal authority would suggest that we

---

8. We agree with Justice Levinson's concurring opinion that the United States and Hawai'i Constitutions forbid "multiple punishments for the same offense"—*i.e.*, conviction of more than one offense when one offense is included within another, unless there is a clear legislative intent to the contrary. Our decision rests on the premise that such intent exists in this case.

would be obligated to apply the same rule to all other criminal proceedings currently pending in the court system.' ") (citing *State v. Kekona*, 77 Hawai'i 403, 411 n. 3, 886 P.2d 740, 748 n. 3 (1994) (Levinson, J., concurring and dissenting) (citing *Powell v. Nevada*, 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994))).

Finally, we reject Brantley's contention that section 2 of the 1999 amendment to HRS § 134–6(a) mandates that his conviction be reversed. As discussed previously, section 1 of the 1999 amendment to HRS § 134–6(a) expressly stated that dual convictions are permitted. Section 2 of the 1999 amendment states that

> [t]his Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date.

1999 Haw. Sess. L. Act 12, § 2 at 12. Brantley argues that this language indicates that the legislature expressly intended that the 1999 amendment to the law not be applied retroactively. We agree. However, the 1999 amendment is inapposite to Brantley's case because he was convicted under the 1993 version of the law and sought relief pursuant to *Jumila*; he was not convicted under the law as it stood after the 1999 amendment. Because we overrule *Jumila*, the relief Brantley seeks is not available. Given our conclusion today that the legislature intended all along to permit dual convictions and amended the law in 1999 in order to address our contrary decision in *Jumila*, we do not believe, as Brantley urges, that by enacting section 2, the legislature intended to expressly disallow all dual convictions for the time period prior to the 1999 amendment, and then to allow the contrary practice of permitting dual convictions after the amendment.

Rather, we think that section 2 was merely a statement that the newly-enacted 1999 amendment to HRS § 134–6(a) should not be applied retroactively.

## IV. CONCLUSION

Based on the foregoing, we overrule our holding in *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998), that a defendant cannot be convicted of both HRS § 134–6(a) and its separate felony and affirm the order of the circuit court denying Brantley's HRPP Rule 35 motion.

### Concurring Opinion by LEVINSON, J.

I join in the decision of the plurality opinion to "overrule our holding in *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998), that a defendant cannot be convicted of both HRS § 134–6(a) and its separate felony," plurality opinion at 99 Hawai'i at 470, 56 P.3d at 1259, "except, of course, as provided in the statute itself," *id.* at 16, 950 P.2d 1201, "and [to] affirm the order of the circuit court denying Brantley's HRPP Rule 35 motion." *Id.* at 19, 950 P.2d 1201. I write separately, however, to emphasize that the aspect of *Jumila* that we are overruling is strictly limited to our mistaken view that there was "not sufficient basis in the language or legislative history of HRS § 134–6(a) to conclude that the legislature ... desired [to] create an exception to the statutory prohibition set forth in HRS § 701–109 [1] against convictions for both an offense and an offense included therein," *Jumila*, 87 Hawai'i at 4–5, 950 P.2d at 1204–05, and to underscore—as a general proposition—that the *Jumila* analysis regarding the foregoing "statutory prohibition" remains good law. Indeed, it *must* remain good law by virtue of the right against double jeopardy, as guaranteed by the United States and

---

1. HRS § 701–109 (1993) provides in relevant part:

> **Method of prosecution when conduct establishes an element of more than one offense.** (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. *The defendant may not, however, be convicted of more than one offense if:*
> (a) *One offense is included in the other,* as defined in subsection (4) of this section[.]

> . . . .
> (4) A defendant may be convicted of an offense included in an offense charged in the indictment or information. *An offense is included when:*
> (a) *It is established by proof of the same or less than all the facts required to establish the commission of the offense charged* [.]

(Emphases added.)

Hawai'i Constitutions.[2] Accordingly, I will undertake in this opinion to elaborate upon what the plurality opinion does *not* overrule.

I wish to emphasize at the outset that my thesis—which seems to elude Justice Acoba—is a narrow one. While we are free to afford greater protections to individuals under article I, section 10 of the Hawai'i Constitution than are perceived in the fifth amendment to the United States Constitution, *see supra* note 2, we are *not* free to construe HRS § 701–109 in such a way as to run afoul of the minimum protections afforded by the fifth amendment's double jeopardy clause. *See State v. Richie,* 88 Hawai'i 19, 42, 960 P.2d 1227, 1250 (1998) ("[W]hen departing from the federal standard, this court must at least provide the minimum level of protection required by the federal interpretation of the United States Constitution." (Citing *State v. Quino,* 74 Haw. 161, 170, 840 P.2d 358, 362, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992), *cert. denied,* 507 U.S. 1031, 113 S.Ct. 1849, 123 L.Ed.2d 472 (1993), and *State v. Texeira,* 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967).)). That is why, at the very least, our construction of HRS § 701–109 must not be more restrictive than the United States Supreme Court's view of the minimum protections that the federal double jeopardy clause imposes. Accordingly, regardless of whether we grounded the *Jumila* analysis solely in principles of statutory construction, we cannot, for present purposes, ignore federal constitutional imperatives.[3] That is also why Justice Acoba's discourse on the differences between federal and Hawai'i double jeopardy juris-

prudence, while interesting, is not germane to my analysis.

This court has

> often recognized that there are three separate and distinct aspects to the protections offered by the double jeopardy clause. *Double jeopardy protects individuals against:* (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) *multiple punishments for the same offense.*

*State v. Quitog,* 85 Hawai'i 128, 141, 938 P.2d 559, 572 (1997) (quoting *State v. Ontiveros,* 82 Hawai'i 446, 450, 923 P.2d 388, 392 (1996)) (internal citations and quotation signals omitted) (emphases added); *see also State v. Rogan,* 91 Hawai'i 405, 416, 984 P.2d 1231, 1242 (1999). The federal view of the range of protections afforded by the fifth amendment is the same. *See, e.g., Jones v. Thomas,* 491 U.S. 376, 380–81, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (characterizing the third protection as being "against 'multiple punishments for the same offense' *imposed in a single proceeding* ") (emphasis added); *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "It is clear that . . . it [was] the third protection—[*i.e.,* that against] multiple punishments—that [was] implicated" in *Jumila. Jumila,* 87 Hawai'i at 10, 950 P.2d at 1210 (Ramil, J., joined by Nakayama, J., dissenting).

Consistent with the constitutional protection against multiple punishments for the

---

2.    The double jeopardy clause of the fifth amendment to the United States Constitution, made applicable to the states through the fourteenth amendment, *see Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 . . . (1969), provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" Analogously, article I, section 10 of the Hawai'i Constitution provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy[.]" We have not always construed the two clauses as coterminous. *See, e.g., State v. Lessary,* 75 Haw. 446, 457–59, 865 P.2d 150, 155–56 (1994) (ruling that interpretation given to double jeopardy clause of fifth amendment by United States Supreme Court does not ade-

quately protect individuals from being "subject for the same offense to be twice put in jeopardy," thus requiring additional protections under Hawai'i Constitution).
*State v. Quitog,* 85 Hawai'i 128, 130 n. 2, 938 P.2d 559, 561 n. 2 (1997) (brackets in original).

3.    My point is not that "our [state constitutional] double jeopardy analysis must meet minimal standards established under the federal constitution," as Justice Acoba suggests, although that point is certainly correct. My point is that HRS § 701–109 must, at the very least, comport with those "minimal standards." If the core *Jumila* analysis were overruled, the statute would not so comport.

same offense, the United States Supreme Court has been steadfast in its view that "with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause ... prevent[s] the sentencing court from 'prescribing greater punishment than the legislature intended.' " *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see also Rutledge v. United States*, 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *Jones*, 491 U.S. at 381, 109 S.Ct. 2522; *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Moreover, the United States Supreme Court "presume[s] that 'where two statutory provisions proscribe the "same offense," ' 'a legislature does not intend to impose two punishments for that offense,' " *Rutledge*, 517 U.S. at 297, 116 S.Ct. 1241 (quoting *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)), but, rather, "intend[s] to authorize only one punishment." *Id.* at 307, 116 S.Ct. 1241. "[T]he presumption against allowing multiple punishments for the same crime may be overcome" only "if [the legislature] *clearly indicates that it intended* to allow courts to impose them." *Id.* at 303, 116 S.Ct. 1241 (citations omitted) (emphasis added). Put differently, " 'where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent' " or " 'unless elsewhere specially authorized by [the legislature].' " Hunter*, 459 U.S. at 366–67, 103 S.Ct. 673 (quoting *Whalen*, 445 U.S. at 691–93, 100 S.Ct. 1432) (emphases in original).

Because the HRS § 701–109(1)(a) prohibition against convictions for both a lesser included and the greater offense is grounded in the double jeopardy clause of the Hawai'i Constitution, *Quitog*, 85 Hawai'i at 130 n. 4, 938 P.2d at 561 n. 4, it is noteworthy that it is federal double jeopardy law that, "[a]s is invariably true of a greater and lesser included offense, ... [t]he greater offense is ... by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Brown*, 432 U.S. at 168, 97 S.Ct. 2221; *see also Rutledge*, 517 U.S. at 307, 116 S.Ct. 1241. That being the case,

> the Double Jeopardy Clause prohibits a State or the Federal Government from trying a defendant for a greater offense after it has convicted him of a lesser included offense.... [O]ne convicted of the greater offense may not be subjected to a second prosecution on the lesser offense, since that would be the equivalent of two trials for "the same offense." ... [T]he sequence of the two trials for the greater and the lesser offense is immaterial, and trial on a greater offense after conviction on a lesser ordinarily is just as objectionable under the Double Jeopardy Clause as the reverse order of proceeding.

*Jeffers v. United States*, 432 U.S. 137, 150–51, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (citations and footnotes omitted). With respect to greater and lesser included offenses, the *Jeffers* principles obviously apply to multiple convictions and sentences imposed in a single trial. *See Rutledge*, 517 U.S. at 297, 116 S.Ct. 1241; *Jones*, 491 U.S. at 381, 109 S.Ct. 2522; *Hunter*, 459 U.S. at 366, 103 S.Ct. 673; *Brown*, 432 U.S. at 165, 97 S.Ct. 2221.

In *State v. Christian*, 88 Hawai'i 407, 967 P.2d 239 (1998), this court relied on the *Jumila* analysis in unanimously reversing a defendant's conviction of and sentence for the offense of "use of a deadly or dangerous weapon in the commission of a crime," in violation of HRS § 134–51(b) (1993), where, in the same proceeding, the defendant had, *inter alia*, also been convicted of second degree murder.[4] In so doing, we ruled as follows:

> HRS § 134–51(b), ... which [the defendant] was convicted of violating in Count II, is a class C felony. And, analogously to HRS § 134–6(a), "the [crime] underlying an HRS § [134–51(b)] charge will always be 'established by proof of the same or less

---

4. HRS § 134–51(b) provides that "[w]hoever knowingly possesses or intentionally uses or threatens to use a deadly or dangerous weapon while engaged in the commission of a crime shall be guilty of a class C felony." HRS § 134–51(b) is unencumbered by the legislative history that the opinion of the court describes in connection with HRS § 134–6(a). *See* opinion of the court at 99 Hawai'i at 466–470, 56 P.3d at 1255–1259.

than all the facts required to establish the commission of the' HRS § [134–51(b)] offense." *Jumila*, 87 Hawai'i at 3, 950 P.2d at 1203. Consequently, as is true with respect to felonies underlying HRS § 134–6(a) offenses, "the [crime] underlying an HRS § [134–51(b)] offense is, as a matter of law, an included offense of the HRS § [134–51(b)] offense," within the meaning of HRS § 701–109(4)(a), and [the defendant] "should not have been convicted of both the HRS § [143–51(b)] offense and the underlying second degree murder offense." *Id.* at 2–3, 950 P.2d at 1202–03 (footnote omitted).

. . . .

. . . [B]ecause [the defendant's] conviction of Count II (use of a deadly or dangerous weapon in the commission of a crime) and simultaneous conviction of Count I [(second degree murder)] is barred under the rationale of this court's opinion in *Jumila*, [the defendant's] conviction of and sentence in connection with Count II is reversed.

*Christian*, 88 Hawai'i at 432–33, 967 P.2d at 264–65 (some brackets added and some in original).

Precisely because the HRS § 701–109(1)(a) prohibition against convictions for both a lesser included and the greater offense is grounded in the double jeopardy clause of the Hawai'i Constitution, which may not be more restrictive than the double jeopardy clause of the fifth amendment to the United States Constitution, the core *Jumila* analysis and *Christian* retain their vitality.

**Concurring Opinion by RAMIL, J., in which NAKAYAMA, J., Joins.**

Consistent with my dissenting opinion in *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998), I agree that this court's holding in *Jumila* should be overruled, and accordingly, the circuit court's denial of Brantley's HRPP Rule 35 motion should be affirmed. I am compelled to write separately for two reasons. First, I cannot agree with the plurality's decision not to consider the subsequent legislative history of the 1999 amendment. Second, I do not wholly agree with the dou-

ble jeopardy analysis as laid out by Justice Levinson in his concurring opinion.

The plurality writes, "In this appeal, the State points to legislative history of a 1993 amendment to the statute—which established the version at issue in this case—and suggests that the legislature was aware that persons were being convicted of both offenses and approved of the practice." Plurality at 99 Hawai'i at 465–466, 56 P.3d at 1254–1255. The plurality then proceeds to examine the 1993 House Standing Committee Report No. 472, the 1993 Senate Standing Committee Report No. 1217, and the 1993 Conference Committee Report No. 12. When the court decided *Jumila* in 1998, it had each of these pieces of legislative history available to it. In 1998, the *Jumila* majority held that it "found no indications in the language of HRS § 134–6(a) or the legislative history preceding its original enactment in 1990 to suggests [sic.] that the legislature intended that an individual could be convicted of both an HRS § 134–6(a) offense and its underlying felony or that the legislature otherwise intended to create an exception to HRS § 701–109." *Jumila*, 87 Hawai'i at 5, 950 P.2d at 1206. The *Jumila* majority even quoted the 1993 Senate Standing Committee Report in its footnote nine. *Id.* at 5 n. 9, 950 P.2d at 1205 n. 9. In light of this, I cannot understand how the plurality has elected not to consider the subsequent legislative history. *See* plurality at 468–469, 56 P.3d at 1257–1258 ("In light of our decision to overrule *Jumila*, we need not consider, as the State urges, whether the subsequent legislative history of the 1999 amendment to the statute would shed further light on the legislature's earlier intent in enacting HRS § 134–6(a).").

"[W]e have often held that 'subsequent legislative history or amendments' may be examined in order to confirm our interpretation of statutory provisions." *Bowers v. Alamo Rent–A–Car, Inc.*, 88 Hawai'i 274, 282, 965 P.2d 1274, 1282 (1998) (Ramil, J., concurring) (citing *Keliipuleole v. Wilson*, 85 Hawai'i 217, 225, 941 P.2d 300, 308 (1997); *State v. Ganal*, 81 Hawai'i 358, 372, 917 P.2d 370, 384 (1996); *Pacific Int'l Servs. Corp. v. Hurip*, 76 Hawai'i 209, 217, 873 P.2d 88, 96

(1994); *Franks v. City & County of Honolulu,* 74 Haw. 328, 340 n. 6, 843 P.2d 668, 674 n. 6 (1993)).

The 1999 Senate Standing Committee report states in relevant part:

> Your Committee finds that the clarification in the law is necessary due to a recent Hawai'i Supreme Court case, *State v. Jumila,* 87 Hawai'i 1 [950 P.2d 1201] (1998), in which the Court held that the offense of carrying or using a firearm in the commission of a felony was not punishable as a separate offense from the underlying felony. In *Jumila,* the majority and the dissent agreed that the legislature could, if desired, permit the conviction and sentencing for both as to whether the legislature has done so. The majority found that there was insufficient legislative history to conclude that the legislature had intended separate convictions and sentencing. The dissent disagreed, however, citing prior case law and language in committee reports indicating that carrying or using a firearm in the commission of a felony could be charged in addition to the underlying offense.
>
> Your Committee agrees with the dissent[.]

Sen. Stand. Comm. Rep. No. 843, in 1999 Senate Journal, at 1296. In my view, this report clearly supports the plurality's holding that "the legislature intended to permit convictions of both HRS § 134–6(a) and the separate felony at the time of Brantley's conviction." Plurality at 99 Hawai'i at 468–469, 56 P.3d at 1257–1258. In fact, there is no piece of legislative history that more convincingly confirms our overruling of *Jumila.* Accordingly, I disagree with the plurality's decision not to consider the subsequent legislative history of the 1999 amendment.

I also write separately because I do not wholly agree with the double jeopardy analysis as laid out by Justice Levinson in his concurring opinion, *see* Levinson, J., concurring at 471, 56 P.3d at 1260, and as adopted by the plurality in its footnote. *See* plurality at 469 n. 8, 56 P.3d at 1258 n. 8.

In *Jumila,* the majority reasoned that, "by virtue of the statutory definition of HRS § 134–6(a), the felony underlying an HRS § 134–6(a) charge will always be 'established by proof of the same or less than all the facts required to establish the commission of the' HRS § 134–6(a) offense. Consequently, the felony underlying an HRS § 134–6(a) offense is, as a matter of law, an included offense of the HRS § 134–6(a) offense." *State v. Jumila,* 87 Hawai'i 1, 3, 950 P.2d 1201, 1203 (1998). Justice Levinson's concurring opinion would accordingly be applicable to the holding by the *Jumila* majority. In the present case, however, because the plurality now holds that "a defendant can be convicted of both HRS § 134–6(a) and the separate [underlying] felony," plurality at 465, 56 P.3d at 1254, a "lesser included offense" analysis is misplaced.

As I stated in my dissent in *Jumila:*

> The first step in the double jeopardy analysis is to determine whether the legislature intended that each violation be a separate offense. If the legislature, as expressed in the language of the statute or its legislative history, clearly intended cumulative punishment under two different statutory provisions, the imposition of multiple punishment does not violate the Double Jeopardy Clause and the court's inquiry is at an end.

*Jumila,* 87 Hawai'i at 11, 950 P.2d at 1211 (Ramil, J., dissenting, joined by Nakayama, J.) (citing *United States v. Lanzi,* 933 F.2d 824 (10th Cir.1991)); (internal citations omitted). Because we have, in the present case, determined that the legislature intended that HRS § 134–6(a) and the underlying felony each be treated as separate offenses, our double jeopardy inquiry is at an end. Therefore, to the extent that the plurality and concurrence continue to cling to the "lesser included offense" analysis of *Jumila,* I respectfully disagree.

### Dissenting Opinion of ACOBA, J.

With all due respect, I believe that the plurality's decision-making methodology violates fundamental precepts that should guide our decisions. Because it is probable that similar questions will confront us in the future, I set out my concerns in detail.

I disagree with the decision to overrule *State v. Jumila,* 87 Hawai'i 1, 950 P.2d 1201 (1998) (holding on "plain language" grounds that a defendant cannot be convicted of both Hawai'i Revised Statutes (HRS) § 134–6(a) and the underlying separate felony), inasmuch as (1) there is no "compelling justification" for doing so, *see State v. Garcia,* 96 Hawai'i 200, 29 P.3d 919 (2001), and (2) contrary to the plurality's assertion, the legislative history of the 1993 amendment to HRS § 134–6(a) was previously considered by the *Jumila* court. I further disagree that subsequent legislative history of HRS § 134–6(a), as urged by Plaintiff–Appellee State of Hawai'i (the prosecution) and relied on by the circuit court of the second circuit (the court), is another basis for overruling *Jumila.*

In my view, this case should be remanded to the trial court to provide the parties the opportunity to brief, present evidence, and argue the question of whether dual convictions under HRS § 136–4(a) violate constitutional double jeopardy principles. That question was left unanswered by the *Jumila* majority. The terse statement in footnote 8 of the plurality opinion and the reference to general double jeopardy principles in the concurring opinion of Justice Levinson do not elucidate in any cogent way the plurality's conclusion that double jeopardy is not implicated in a case of this nature—a matter undecided in our case law and not raised or argued by the parties in this appeal. Because Defendant–Appellant Mark A. Brantley (Defendant) relied entirely on the statutory analysis in *Jumila,* and because at that point *Jumila* was good law, he should be allowed to demonstrate why, if *Jumila* is no longer controlling, constitutional double jeop-

ardy principles would preclude the affirmance entered by the plurality in this case.[1]

### I.

While I agree that precedent may be overruled for compelling reasons, *see Garcia,* 96 Hawai'i at 206, 29 P.3d at 925, such reasons are not present in the plurality's opinion.

### A.

To provide some background, Defendant was sentenced, *inter alia,* to life in prison for murder in the second degree, HRS § 707–701.5, and to twenty years for carrying or use of a firearm in commission of a separate felony, HRS § 134–6(a). Judgment was filed on March 6, 1997, and became effective as of February 27, 1997. No appeal was taken from the judgment.[2]

On February 3, 1998, this court decided *Jumila.* Like Defendant, in *Jumila,* the defendant was convicted of murder in the second degree, HRS § 707–701.5(1), and carrying or using a firearm in the commission of a separate felony, HRS § 134–6(a), the felony being the second degree murder. *See* 87 Hawai'i at 1–2, 950 P.2d at 1201–02. Jumila was sentenced to a mandatory minimum term of imprisonment pursuant to HRS § 701–660.1(1)(a), for the use of a firearm during the commission of a murder. *See* 87 Hawai'i at 2, 950 P.2d at 1201–02. Following the imposition of sentence, Jumila filed a motion to reduce and correct illegal sentence pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 35,[3] which the circuit court denied. *See id.*

---

1. As stated *infra,* Jumila was not premised on double jeopardy grounds. Therefore, Defendant's reliance on *Jumila* did not encompass a double jeopardy argument.

2. Defendant had appealed the original sentence in this case, the details of which are not relevant to this proceeding. The sentence discussed herein refers to the final sentence, rendered and imposed after remand from the Intermediate Court of Appeals (ICA). *See State v. Brantley,* 84 Hawai'i 112, 929 P.2d 1362 (App.1996).

3. At his sentencing hearing, Jumila argued that if a mandatory minimum term of imprisonment

was imposed, then HRS § 701–109(1)(a) and (4)(a) (1993) would prohibit the imposition of separate sentences for each offense. *See Jumila,* 87 Hawai'i at 1–2, 950 P.2d at 1201–02. The circuit court sentenced Jumila to (1) life imprisonment with the possibility of parole on the second degree murder charge, (2) an indeterminate term of imprisonment with the possibility of parole for the HRS § 134–6(a) charge, and (3) a mandatory minimum sentence of fifteen years on the second degree murder charge pursuant to HRS § 701–660.1(1)(a). *See id.*

## B.

Jumila appealed, contending that (1) the second degree murder charge was an included offense of the HRS § 134–6(a) charge, pursuant to HRS § 701–109(4)(a), because he was sentenced to the mandatory minimum term under HRS § 706–660.1(a) for using a firearm during the murder and (2) the imposition of "dual punishment" under HRS § 134–6(a) and HRS § 706–660.1(a) violated his constitutional right against double jeopardy. *Jumila*, 87 Hawai'i at 2, 10, 950 P.2d at 1202, 1210. A majority of this court agreed with Jumila's first contention, holding that "the felony underlying an HRS § 134–6(a) offense is, as a matter of law, an included offense of the HRS § 134–6(a) offense." *Id.* at 3, 950 P.2d at 1203. At that time, HRS § 134–6(a) (1993) provided in pertinent part as follows:

> *It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony,* whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection where the felony is:
>
> (1) A felony offense otherwise defined by this chapter[.]

(Emphasis added.) The majority asserted that "the legislature could, if it desired, create an exception to the statutory prohibition set forth in HRS § 701–109 against convictions for both an offense and an offense included therein … [, but] *there is not sufficient basis in the language or legislative history of HRS § 134–6(a) to conclude that the legislature so desired.*" *Jumila*, 87 Hawai'i at 4–5, 950 P.2d at 1204–05 (emphasis added). Reasoning that "[b]ecause the felony underlying an HRS § 134–6(a) offense is an included offense of the HRS § 134–6(a) offense, pursuant to HRS § 701–109(1)(a)," the majority there held that "Jumila should not have been convicted of both the HRS § 134–

6(a) offense and the underlying second degree murder offense." *Id.* at 3, 950 P.2d at 1203. It was decided that the conviction and sentence for one of the two offenses, use of a firearm in the commission of a separate felony pursuant to HRS § 134–6(a), should be reversed, and the other, second degree murder pursuant to HRS § 707–701.5(1), affirmed.[4] *See id.* The majority did not reach Jumila's double jeopardy claim.

The *Jumila* dissent maintained that (1) second degree murder was not an included offense of carrying or use of a firearm because it perceived from legislative history that the legislature intended to allow simultaneous convictions for both HRS § 134–6(a) and the underlying felony, *see id.* at 10, 950 P.2d at 1204 (Ramil, J., dissenting), and (2) double jeopardy would prohibit the imposition of cumulative punishments under both HRS § 134–6(a) and HRS § 770–660.1 when based upon the same underlying felony, and, thus, the trial court should not have imposed both an indeterminate twenty-year term of imprisonment under HRS § 706–659 and a fifteen-year mandatory minimum sentence under HRS § 706–660.1. *See id.* at 14, 950 P.2d at 1214.

## II.

On January 12, 1999, Defendant filed, in the instant case, a motion pursuant to HRPP Rule 35, arguing, in essence, that the *Jumila* decision required the court to reverse Defendant's HRS § 134–6(a) conviction and sentence because Jumila and Defendant were similarly situated. Initially, the hearing on the motion was scheduled for January 19, 1999. On January 19, 1999, the parties stipulated to a continuance until February 4, 1999, at the request of the prosecution. The prosecution filed a memorandum in opposition to Defendant's motion on February 3, 1999, referring to a possible legislative amendment to § 134–6(a).

> [T]he current 1998–1999 legislative session will be considering a bill which would clarify the legislature's intent to allow in-

---

4. Determining that Jumila should not have been convicted of both offenses, *see* 87 Hawai'i at 3, 950 P.2d at 1203, the majority stated that "it would be manifestly unfair to the prosecution and to the public to reverse the second degree murder conviction simply because it was the included offense[,]" *id.* at 4, 950 P.2d at 1204.

dependent convictions for both HRS § 134–6(a) and any enumerated included offense. According to commentators, the likelihood of the bill's passage is high.

The prosecution also maintained that (1) relying upon *State v. Ikezawa*, 75 Haw. 210, 857 P.2d 593 (1993), and *State v. Okuno*, 81 Hawai'i 226, 915 P.2d 700 (1996), the *Jumila* interpretation of HRS § 134–6(a) should not be retroactively applied to Defendant's case, (2) there would be no appreciable benefit to Defendant if the 134–6(a) charge were reversed, because Defendant was already serving concurrent prison terms for other felonies, and (3) it would be unable to resurrect the charge if the court dismissed the HRS § 134–6(a) count under *Jumila* and the legislature subsequently passed the pending bill.[5] In connection with its last position, the prosecution indicated that "if the [court] is inclined to grant the Defendant's motion[,] ... the hearing be postponed till [sic] after the current legislative session in order that the issue of the pending HRS § 134–6(a) bill may be resolved." The court heard Defendant's motion on February 14, 1999, but continued the hearing for six months to await the legislature's action:

> THE COURT: ... [T]he question is whether to retroactively apply a Supreme Court decision regarding the issue of a lesser included offense.
>
> After reviewing this matter and thinking about it, I'm going to continue the hearing on this for six months because I think since this very matter is again before the legislature, and because of the filial relationships of these two offenses, I'm going to—*I want to see what the legislature is going to do before I make a decision to retroactively apply the ruling in the case.*
>
> It's a close question as to whether I should do it in the first place, but *I want to see what the legislature is going to do.*
>
> If they change the law so that it's not going to be applied in the manner which the cited case law indicates it is now, then I won't make any change. If they do, then

I'll go back and evaluate the matter, whether it should be retroactively applied.

> [PROSECUTION]: As I pointed out in the case law, *the Court always has the discretion to retroactively apply a particular decision, a judicial decision,* and in this particular case there is other reasons besides the fact that the legislature may take action that I think warrants the Court in not taking any action at all.
>
> [DEFENSE COUNSEL]: *Let me put on the record my objection to continuing the matter. It's been continued once.*
>
> THE COURT: It has?
>
> [DEFENSE COUNSEL]: Yeah, we stipulated to a continuance so that [the prosecution] would have time to research this issue. *It was originally set in January, I believe.*
>
> . . . .
>
> THE COURT: I'll continue this two weeks and the State will make the filing within one week from today, and that gives you a week to file something in response.
>
> . . . .
>
> ... I want to see what the language of the statute is. I don't know, I might change my mind.
>
> I want to continue this hearing.
>
> [CLERK]: So March 2nd, 8:00 a.m.
>
> THE COURT: So *I'm going to leave it as my inclination to continue it until after the legislature addresses this, but I think it's a fair point that we should actually look at the bill,* and especially since the movant, you know, got short notice on the responding memorandum.

(Emphases added.) Subsequently, Defendant and the prosecution submitted briefs pursuant to the court's request. Defendant argued *inter alia* that the case should not be continued any further because *Jumila* was "the law":

> There, is no valid reason for continuing this Motion any further. After the hearing on March 2, 1999, this Court should not delay making a decision thereon. This

---

5. The prosecution appeared to be under the mistaken impression that the 1999 amendment would apply to Defendant's case, *see* discussion *infra,* and that deciding the motion prior to the passage of the amendment would somehow prejudice it.

Motion has already been continued twice, due to no fault of Defendant.

Currently, *State v. Jumila, supra* [,] is the law of the land. The Motion was made and is being heard while *State v. Jumila* is the law of the land. This Honorable Court should render a decision thereon expeditiously. We do not even have any idea whether this law will change.

In response, the prosecution urged that the court should continue the matter because the legislation would "nullif[y]" *Jumila:*

[T]he State would submit that the prejudice it would suffer is unique in at least one aspect; time sensitive legislative events are pivotal. *If Senate Bill 1122, which nullifies Jumila,* is passed by the legislature after the Court grants the Defendant's motion, the State would be irrevocably prejudiced. The State could not undo this Court's action in reversing a conviction and dismissing a charge.

*Although the Defendant urges this Court not to delay a decision on his motion, the conservative and perhaps most pragmatic course would be for the Court to delay its ruling till [sic] late summer.* A delay does not prejudice the Defendant and resolves the question of Senate Bill 1122's fate.

(Emphases added.) On March 2, 1999, the court again continued the matter to await legislative action, opining, in opposition to the *Jumila* holding, that, in its view, the legislature had not intended to treat murder as a lesser included offense of the firearm charge.

THE COURT: *The Court's view is that the legislature did not intend it to be a lesser included offense.* I understand the Supreme Court's ruling. *I see the legislature is attempting at the present moment to correct this,* and I think—I don't see any prejudice to [Defendant] for waiting a few months to see if it does.

*This will affect the Court's view on retroactivity certainly.* So I'm going to continue this matter for 90 days.

. . . .

Is that enough time? When is the legislature over? Okay. 90 days ought to do it.

[CLERK]: So this matter will be continued to June 8th at 8:00 a.m.

(Emphases added.)

On April 13, 1999, Senate Bill No. 1122 was signed into law as Act 12. *See* 1999 Haw. Sess. L. Act 12, at 12. Act 12 amended HRS § 134–6 (Supp.1998) to include the following language:

A conviction and sentence under subsection (a) or (b) *shall be in addition to and not in lieu of any conviction and sentence for the separate felony;* provided that the sentence imposed under subsection (a) or (b) may run concurrently or consecutively with the sentence for the separate felony.

HRS § 134–6 (Supp.2001) (emphasis added). The Act became effective on April 13, 1999, but provided that "[t]his Act does not affect rights and duties that matured, penalties that were incurred, *and proceedings that were begun, before its effective date.*" 1999 Haw. Sess. L. Act 12, § 2, at 12 (emphasis added).

After learning that Act 12 had been signed into law, the prosecution moved to advance the hearing date. The court agreed and advanced the hearing date "for decision" to May 18, 1999.

At the hearing on May 18, 1999, the prosecution argued that as a result of Act 12, the legislature's "intent" as to HRS § 134–6(a) "was, in fact, clarified" and *Jumila* was now "moot":

The issue is that particular decision[, *Jumila* ]. Jumila . . . was valid for a little over 14 months. [Defense counsel] filed the [motion] . . . on January 12th of this year, and Act 012, which basically vitiates the Jumila decision, became law on April 13, 1999.

*In other words, Section 134–6(a) was, in fact, clarified by the legislature, or at least the legislature's intent, in regards to that particular statute, was clarified* three months after the filing of the defendant's motion.

Basically, the State's position is that there has been a prejudice to the State. Should the motion be granted, that prejudice briefly lies in the damage to the concepts of fairness and justice if [the victim]'s killer, who is [Defendant], were to

have his sentence diminished by the retroactive application of *what is now a moot decision on the part of the Supreme Court in State versus Jumila.*

(Emphases added.) Finding *Jumila's* interpretation "faulty," "no question" of what the prior legislature had intended, and that the present legislature had "clarified" the statute, the court rejected Defendant's request to apply *Jumila* retroactively.

Then when the Supreme Court addressed [§ 134–6(a) ] in the *Jumila* case, it found that, in fact, because of the way the law was drafted and passed by the legislature, that technically it actually qualified ... as a lesser included offense, so conviction of that and the greater offense was not correct, and actually that was a later case.

So, then you brought your motion and said, well, given that the Court ought to consider retroactively applying that decision and applying it to [Defendant's] case. But looking at the Ik[e]zawa case, which basically says that this is a discretionary call with the Court, I looked through the factors there. One of them is the effect on *the administration of justice of a retroactive application of the new standards, clearly, appears to me this was the Supreme Court's efforts to interpret a statute passed by the legislature which basically was faulty.*

No question what the intent of the legislature was, and that was to make it a separate crime if you use a weapon, a gun in this type of crime. And so I think that to apply this retroactively would not be in the interest of justice.

. . . .

[DEFENSE COUNSEL]: I just want to get clarification from the Court.

*Is the Court deciding this motion on the law prior to SB 1120?*

THE COURT: *Actually I just didn't think it was appropriate application and the fact that the legislature changed it, clarified it, that's exactly what they meant. I took that into consideration. That was my decision.*

(Emphases added.) On May 25, 1999, the court entered its order denying Defendant's motion and Defendant appealed.

On appeal, Defendant contends that the court had no choice but to apply *Jumila* retroactively and to grant Defendant's motion to correct the illegal sentence. The prosecution argues that (1) the court did not abuse its discretion when it determined that *Jumila* did not apply retroactively to Defendant's motion, or, in the alternative, (2) that this court should overrule the *Jumila* decision. As is evident, the plurality agrees that the *Jumila* decision should be overruled. *See* Plurality opinion at 99 Hawai'i at 464, 56 P.3d at 1253.

### III.

#### A.

Upon its publication in 1998, *Jumila* became precedent. As we recently observed in *Garcia,*

[p]recedent is an adjudged case or decision of a court, considered as furnishing an example of authority for an identical or similar case afterwards arising or a similar question of law. The policy of courts to stand by precedent and not to disturb settled points is referred to as the doctrine of stare decisis, and operates as a principle of self-restraint with respect to the overruling of prior decisions. The benefit of stare decisis is that it furnishes a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise[,] eliminates the need to relitigate every relevant proposition in every case[,] and maintains public faith in the judiciary as a source of impersonal and reasoned judgments.

96 Hawai'i at 205, 29 P.3d at 924 (internal quotation marks, citations, and ellipsis points omitted). *See also Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) ("[S]tare decisis ensures that the law will not merely change erratically and permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals." (Citations and quotation marks omitted.)), *superseded by statute on other*

*grounds as stated in Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

Discussing the standard for overruling precedent, *Garcia* also decided that, "[w]hile there is no necessity or sound legal reason to perpetuate an error under the doctrine of stare decisis, we agree with the proposition expressed by the United States Supreme Court that a court should 'not depart from the doctrine of stare decisis without some compelling justification.' " 96 Hawai'i at 206, 29 P.3d at 925 (quoting *Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (some internal quotation marks and citations omitted). In that connection, it was stated that "considerations of stare decisis have special force in the area of statutory interpretation ... [where] the legislative power is implicated, [because] the legislative branch remains free to alter what we have done." *Id.* (quoting *Hilton*, 502 U.S. at 202, 112 S.Ct. 560) (internal quotation marks and citation omitted)) (brackets omitted). Inasmuch as HRS § 134–6 was subject to legislative amendment following *Jumila*, considerations of stare decisis weigh heavily in favor of preserving *Jumila* as precedent. It is within this framework that this case must be evaluated.

### B.

The plurality's "compelling justification" for overruling *Jumila* is based on legislative history from the 1993 amendment which, it contends, this court did not consider in *Jumila*. But, in *Jumila, this court stated that it was the plain language of § 134–6 that prohibited dual convictions. See Jumila*, 87 Hawai'i at 5, 950 P.2d at 1205 ("[W]e must abide by the plain language of HRS §§ 134–6(a) and 701–109, which, as discussed above, prohibits the conviction of a defendant for both an HRS § 134–6(a) offense and its un-

derlying felony."). The plurality in its present approach decides, however, that the language in § 134–6(a) is not plain after all, and that "the 1993 amendment illuminate[d] an ambiguity in HRS § 134–6(a)[.]" Plurality opinion at 99 Hawai'i at 466, 56 P.3d at 1255. This proposition rests on what is said to be several "unconsidered" standing committee reports indicating that "the legislature intended to *allow* dual convictions whenever the separate felony was *not* one of the designated offenses." [6] Plurality opinion at 466–467, 56 P.3d at 1255–1256 (emphases in original).

*Contrary to this assertion, however, the Jumila court did consider the 1993 legislative history, but did not find such history persuasive.* The dissent reviewed the legislative history of § 134–6(a), *see* 87 Hawai'i at 7, 950 P.2d at 1207 (Ramil, J., dissenting), as well as the text of § 134–6(a), *see id.* at 8, 950 P.2d at 1208. Citing to a Standing Committee Report relating to the 1993 version of § 134–6, the dissent found the legislature intended to allow punishment for both the firearm charge and the separate underlying offense. *See id.* at 7, 950 P.2d at 1207. Responding to this view, the majority rejected the legislative history on which the plurality now purports to rely:

> We agree [with the dissent] that the legislature could, if it desired, create an exception to the statutory prohibition set forth in HRS § 701–109 against convictions for both an offense and an offense included therein. In our view, however, *there is not sufficient basis in the language or legislative history of HRS § 134–6(a) to conclude that the legislature so desired.*
>
> *We have found no indications in the language of HRS § 134–6(a) or the legislative history preceding its original enactment in 1990 to suggests [sic] that the legislature intended that an individual could be convicted of both an HRS § 134–6(a) offense and its underlying felony or*

---

6. These reports refer to "enhanced penalties for the use of a firearm" and appear to better support an interpretation that the legislature was attempting to avoid double jeopardy violations. *See* Sen. Stand. Comm. Rep. No. 1217, in 1993 Senate Journal, at 1210 ("[T]his bill will correct the overreaching effect of section 134–6, which allows the prosecutor to apply this section to offenses that already have enhanced penalties for the use of a firearm[.]"); Conf. Comm. Rep. No. 12, in 1993 House Journal, at 880 ("The purpose of this bill is to amend [HRS § 134–6] to clarify that this section was not intended to apply to certain felonies, that already have enhanced penalties for identical conduct.").

that the legislature otherwise intended to create an exception to HRS § 701–109. *Id.* at 5, 950 P.2d at 1204–05 (emphasis added). Because this court had access to the legislative history of § 134–6(a) and stated expressly that this history was considered, there is no "unconsidered" legislative history that provides new support for overturning *Jumila.*

As observed by Justice Ramil in the instant case, the *Jumila* majority did not, in fact, "overlook" the legislative history that the instant plurality relies upon. Concurring opinion of Ramil, J., at 99 Hawai'i at 463–464, 56 P.3d at 1252–1253. The enumerated exceptions listed in HRS § 134–6(a) that the plurality uses to support its interpretation were considered by the *Jumila* majority, but disregarded. *See id.* Moreover, the *Jumila* majority quoted from a committee report that the instant plurality now deems unconsidered. *See id.* at 2, 950 P.2d 1201.

### IV.

As a basis for annulling *Jumila,* the prosecution urges a reliance on a legislative committee report of the 1999 legislature purporting to clarify that the 1993 legislature had, in HRS § 134–6, intended all along to permit dual convictions for the firearm offense of § 134–6 and for the underlying felony therefor. That report states:

> *Your Committee finds that clarification in the law is necessary due to a recent Hawai'i Supreme Court case, State v. Jumila,* 87 Hawai'i 1 [950 P.2d 1201] (1998), in which the Court held that the offense of carrying or using a firearm in the commission of a felony was not punishable as a separate offense from the underlying felony. In *Jumila,* the majority and the dissent agreed that the legislature could, if desired, permit the conviction and sentencing for both offenses. However, the majority and dissent disagreed as to whether the legislature had done so. The majority found that there was insufficient legislative history to conclude that the legislature had intended separate convictions and sentencing. The dissent disagreed, citing prior case law and language in committee reports indicating that carrying or using a

firearm in the commission of a felony could be charged in addition to the underlying offense.

> *Your Committee agrees with the dissent.* Senate Standing Committee Report No. 1217 (1993 Senate Journal at 1210) clearly states[,] "[A]n offender who uses a firearm in the commission of a felony can be charged with, in addition to the underlying offense, a class A felony under section 134–6(a) and therefore be subject to enhanced penalty."

Sen. Stand. Comm. Report No. 843, in 1999 Senate Journal, at 1296 (emphases added). Such reliance on after-the-fact "legislative history" is questionable at best.

Subsequent amendments or the legislative history of subsequent amendments as a basis for construing the intent of prior legislatures should be viewed with extreme caution. *See United States v. Texas,* 507 U.S. 529, 535, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) ("[S]ubsequent legislative history is a 'hazardous basis for inferring the intent of an earlier' Congress." (Quoting *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990).)); *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960) (noting that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one"). *See also Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 189–93, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), *superseded by statute on other grounds as stated in Pacific Rivers Council v. Thomas,* 30 F.3d 1050 (9th Cir.1994); *SEC v. Sloan,* 436 U.S. 103, 119–22, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978). "[E]ven when it would otherwise be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).

The basis for such skepticism lies in the inherent unreliability of such pronouncements. In many instances, subsequent legislatures are comprised of different individuals who were not privy to the intentions of earli-

er legislators. *See United States v. United Mine Workers,* 330 U.S. 258, 281–82, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (explaining that subsequent statements regarding the scope of an act "were expressed by Senators, some of whom were not members of the Senate in 1932, and none of whom was on the Senate Judiciary Committee which reported the bill[,]" and that the statements "were expressed eleven years after the Act was passed and cannot be accorded even the same weight as if made by the same individuals"). Even the same legislators' statements of earlier purpose are not necessarily reliable, because "as time passes memories fade and a person's perception of his [or her] earlier intention may change." *Consumer Prod. Safety Comm'n,* 447 U.S. at 118 n. 13, 100 S.Ct. 2051. It would also appear self-evident that multiple considerations may motivate a subsequent amendment or legislative statement, some of which may not relate to the supposed intent of a prior legislature.

In view of the foregoing considerations, I cannot agree that a legislature's views of the original intent of a statute enacted six years earlier by another legislature amounts to a "compelling" basis for overruling precedent.

### V.

### A.

Act 12 specifically did "not affect rights and duties that matured, penalties that were incurred, *and proceedings that were begun, before its effective date.*" 1999 Haw. Sess. L. Act 12, § 2, at 12 (emphasis added). This clause directs and confirms the legislative intent that the 1999 amendment should have *no effect* on proceedings that were begun prior to its April 13, 1999 effective date, such as that commenced by Defendant on January 12, 1999. *See* HRS § 1–3 (1993) ("No law has any retrospective operation, unless otherwise expressed or obviously intended."). Because the Act expressly indicated that it was to have prospective effect only, the amendment should not be considered applicable in any way to proceedings begun before its passage, even if the *Jumila* decision prompted the amendment.

This precept is consistent with tenets of statutory construction. Absent clearly express contrary legislative intent, the well-established rule of statutory construction forbids the retrospective operation of statutes. *See Yamaguchi v. Queen's Medical Ctr.,* 65 Haw. 84, 89, 648 P.2d 689, 693 (1982); *Clark v. Cassidy,* 64 Haw. 74, 77, 636 P.2d 1344, 1346 (1981); *Graham Constr. Supply v. Schrader Constr.,* 63 Haw. 540, 546, 632 P.2d 649, 653 (1981); HRS § 1–3; 1A N.J. Singer, *Sutherland Statutory Construction* § 22.36 (5th ed. 1993) ("[I]t is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively ... [; t]here is a presumption of prospectivity that can only be rebutted by the act itself."); *see also Bond v. State,* 675 So.2d 184, 185 (Fla.Dist.Ct.App.) ("The amendment [to the statute] does not provide for retroactive application, therefore, it is to be applied prospectively."), *review denied,* 684 So.2d 1350 (1996).

In *State v. Nakata,* 76 Hawai'i 360, 878 P.2d 699, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied, Nakata v. Hawai'i,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995), this court did allow retroactive application of an amendment which overrode a judicial decision, but there the amendment expressly provided that it was to be applied retroactively. *See id.* at 364, 878 P.2d at 703 (citing 1993 Haw. Sess. Law Act 128, § 5, at 179–80, which stated, "This Act shall take effect upon its approval; provided that section 2 shall be retroactive for all pending first-offense cases for driving under the influence of intoxicating liquor."). That is not the case here.

Generally, interpretive statutes are to be applied prospectively:

> The usual purpose of a special interpretive statute is to correct a *judicial interpretation* of a prior law which the legislature determines to be inaccurate. Where such statutes are given any effect, the effect is *prospective only.*

1A C. Sands, *Statutory Construction* § 27.04 (5th ed.1991) (emphases added). Consequently, in the absence of legislative direction that such amendment be applied retroactively, there is no justification for

employing subsequent legislative history of an amendment as the basis for "clarification" of original legislative intent.

## B.

Moreover, that the 1999 amendment was enacted in response to *Jumila* does not override the legislature's express direction in Act 12 that the amendment was not to be applied retroactively. In *Rivers v. Roadway Express*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), the United States Supreme Court noted that "the choice to enact a statute that responds to a judicial decision is quite distinct from the choice to make the responding statute retroactive." *Id.* at 305, 114 S.Ct. 1510. There, the Court ruled that, "[e]ven when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear." *Id.* at 313, 114 S.Ct. 1510. *Accord Sutherland Statutory Construction, supra,* § 41.01 ("[A] statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date.").

Therefore, giving retroactive effect to Act 12 violates not only the express direction of the Act itself, but also accepted rules of statutory construction. After the *Jumila* decision, the legislature, in amending HRS § 134–6(a), could not authoritatively "clarify" the original intent of the earlier legislature, but could only amend the statute. *See Marine Power & Equip. Co. v. Washington State Human Rights Comm'n Hearing*, 39 Wash.App. 609, 694 P.2d 697, 700 (1985) ("The Legislature may not, under the guise of clarification, overrule by legislative enactment a prior authoritative Supreme Court opinion construing a statute.").

## VI.

More significantly, such an approach would adversely affect our system of checks and balances and the separation of functions among the branches of government. Reinterpreting the original intent of a past legislature based on the expressions of a subsequent different legislature "would make the legislature a court of last resort." Sands, *Statutory Construction, supra,* § 27.04. Such a course in effect places the interpretation of statutes, a judicial function, in the hands of the legislature. The appropriate legislative function is not to reconstrue the judiciary's interpretation of a statute, but to amend the statute if it seeks to supercede a rule of law. As one court has noted,

> [s]eparation of powers problems arise when the Legislature attempts to perform a judicial function. The function of a legislature is to make laws, not to construe them. Nor can the Legislature construe the intent of other legislatures. The latter functions are primarily judicial. Thus, legislative clarifications construing or interpreting existing statutes are unconstitutional when they contravene prior judicial interpretations of a statute.

*Marine Power & Equip. Co.,* 694 P.2d at 700 n. 2. A legal environment in which any subsequent legislative statement can retroactively override the prior construction of a statute by this court is thus problematic. In sum, the legislative history in these circumstances is neither compelling nor a justifiable basis for overturning this court's precedent.

## VII.

As for the court's conclusion that such subsequent history was relevant to Defendant's Rule 35 proceeding, it is necessary to emphasize the binding nature of *Jumila* as precedent on the court in the light of its statements during the proceedings.

Under the doctrine of stare decisis, *Jumila's* construction of § 134–6(a) was applicable and binding on trial courts. "[W]here a [legal] principle has been passed upon by the court of last resort, it is the duty of all inferior tribunals to adhere to the decision, without regard to their views as to its propriety, until the decision has been reversed or overruled by the court of last resort or altered by legislative enactment." *State by Price v. Magoon*, 75 Haw. 164, 186, 858 P.2d 712, 723 (quoting *Robinson v. Ariyoshi,* 65 Haw. 641, 653, 658 P.2d 287, 297 (1982) (citations omitted), *reconsideration denied,* 66

Haw. 528, 726 P.2d 1133 (1983)), *reconsideration denied,* 75 Haw. 580, 861 P.2d 735 (1993). *See also People v. Haynes,* 61 Cal. App.4th 1282, 72 Cal.Rptr.2d 143, 153 (1998) ("[T]he doctrine of stare decisis compels lower court tribunals to follow the Supreme Court whatever reason the intermediate tribunals might have for not wishing to do so."). "It is the duty of the [trial] court[s] to adhere to and to be guided by the opinions of the [appellate] court . . . unless subsequently reversed[.]" *In re Estate of Allen,* 35 Haw. 501, 501 (1940).

Hence, at the time the motion was filed, the court was bound to accept the *Jumila* rule established by this court. By postponing its decision, the court called into question the duty imposed on all trial courts to follow the law as established by a higher tribunal. The court's disregard of *Jumila* as precedent was a departure from this fundamental principle.[7] Plainly, the court was bound by precedent, notwithstanding its own opinion of what the *Jumila* court should have held.

### VIII.

Justice Levinson's concurring opinion asserts that the plurality overrules *Jumila* only

insofar as that opinion mistakenly concluded that there was insufficient legislative history of HRS § 134–6(a) to determine that the legislature intended two separate punishments for both an offense under that statute and the attendant felony. *See* Concurring opinion of Levinson, J., at 99 Hawai'i at 470, 56 P.3d at 1259. The concurrence then explains that "the *Jumila* analysis regarding the foregoing 'statutory prohibition' remains good law. Indeed, it *must* remain good law by virtue of the right against double jeopardy . . . ." *Id.* (emphasis in original).

Although double jeopardy was raised by the defendant in *Jumila,* the *Jumila* decision was not premised *at all* on double jeopardy concepts, but *only* on a statutory analysis. The *Jumila* majority specifically stated that it was not considering any double jeopardy argument leveled by the defense:

> Because we are reversing Jumila's conviction and sentence on the HRS § 134–6(a) charge, *we need not address* Jumila's argument that *the double jeopardy clause* prohibits the imposition of both a sentence on the HRS § 134–6(a) charge and a mandatory minimum term pursuant to HRS

7. I do not believe that, in this case, the court's actions violated the Code of Judicial Conduct (CJC) Canons 3.B(8) (2001), 3.B(5) (2001), and 2.A (2001). However, courts in similar situations should be cautioned that delaying a ruling, such as regarding Defendant's motion, could implicate these canons, even when no impropriety or prejudice to a defendant is intended.

CJC Canon 3.B(8) states that "[a] judge shall dispose of all judicial matters promptly, efficiently[,] and fairly." This means that "[i]n disposing of matters promptly, efficiently[,] and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay." Commentary to Canon 3. Thus, a court should resolve post-conviction motions in a timely manner.

Similarly, delay at the behest of a party, in this case the prosecution, also may raise an appearance of bias by the court as was raised by Defendant. Canon 3.B(5) of the Code of Judicial Conduct states that "[a] judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice." The Commentary cautions that "[a] judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings

the judiciary into disrepute. . . . A judge must be alert to avoid behavior that may be perceived as prejudicial." Commentary to Canon 3.

Continuing a decision on a defendant's motion at the request of the prosecution without good cause may also raise an appearance of impropriety. *See* CJC Canon 2.A ("A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."). As noted in the Commentary to Canon 2.A,

> [p]ublic confidence in the judiciary is eroded by irresponsible or improper conduct by judges. . . .
> . . . .
> . . . [T]he proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code . . . . The test for appearance of impropriety is *whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality* [,] *and competence is impaired.*

(Emphasis added.) In reasonable minds, postponing a defendant's motion for a lengthy period without good cause can create a perception of the court's inability to be impartial as to that defendant.

§ 706–660.1(1)(a) based on the single use of a firearm.

*Jumila*, 87 Hawai'i at 4 n. 7, 950 P.2d at 1204 n. 7 (emphases added.) Because the *Jumila* majority refused to consider the double jeopardy claim, it cannot now be reasonably argued that most of the *Jumila* rationale must be maintained to preserve double jeopardy rights. Thus, the present plurality's overruling of the *Jumila* analysis, based as it is upon a *statutory* analysis, leaves nothing to which to attach any "vitality." [8] Concurring opinion of Levinson, J., at 99 Hawai'i at 472–473, 56 P.3d at 1261–1262. Insofar as Justice Levinson's analysis rests on the proposition that our double jeopardy analysis must meet minimal standards established under the federal constitution, he answers what is not questioned and restates what is obvious. How that proposition is to be squared with our case law is what is "germane" to this case and what is not answered.

## IX.

The question of whether *State v. Lessary*, 75 Haw. 446, 865 P.2d 150 (1994), or *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), applies to

multiple punishments in a single prosecution has not been answered by this court.[9] *See Tomomitsu v. State*, 93 Hawai'i 22, 31, 995 P.2d 323, 332 (App.2000) (Acoba, J., concurring) ("The supreme court has not expressly indicated which test applies under the Hawai'i Constitution in the multiple punishments situation."). In *State v. Ake*, 88 Hawai'i 389, 967 P.2d 221 (1998), this court reiterated that double jeopardy analysis applies in three circumstances, one of which is the imposition of multiple punishments for the same offense:

> We have often recognized that double jeopardy is implicated in three types of situations. "Double jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Quitog*, 85 Hawai'i 128, 141, 938 P.2d 559, 572 (1997) (quoting *State v. Ontiveros*, 82 Hawai'i 446, 450, 923 P.2d 388, 392 (1996)). *See also North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)[, *overruled on other grounds by*

---

**8.** I observe, as well, that Justice Levinson's concurring opinion could be read to suggest that *State v. Christian*, 88 Hawai'i 407, 967 P.2d 239 (1998) remains good law because the legislative history of the statute referred to in that case, HRS § 134–51(b) (1993), "Use of a deadly or dangerous weapon in the commission of a crime," does not reflect a legislative intent to allow for conviction under that statute and a predicate felony. *See* Concurring opinion of Levinson, J., at 99 Hawai'i at 472 n. 4, 56 P.3d at 1261 n. 4. Significantly, *Christian* relied entirely on *Jumila* when reversing the defendant's conviction for use of a deadly or dangerous weapon in commission of a crime. *See Christian*, 88 Hawai'i at 411, 967 P.2d at 242 ("[B]ecause Christian's conviction for ... use of a deadly or dangerous weapon in the commission of a crime ... and simultaneous conviction of [second degree murder] is barred under the rationale of this court's opinion in *Jumila*, we reverse his conviction of and sentence in connection with [the former crime]."). Nowhere in the text of *Christian* do the words "double jeopardy" appear, nor is there any discussion of what the legislature did and did not intend in enacting HRS § 134–51(b). Because *Christian* was entirely premised on *Jumila*, which, as stated *supra*, was decided on statutory grounds, in my opinion, by overruling

*Jumila*, this court cannot now salvage *Christian* on double jeopardy principles.

**9.** In *State v. Caprio*, 85 Hawai'i 92, 937 P.2d 933 (App.1997), the ICA applied what amounted to a "*Blockburger* plus" test for double jeopardy in a multiple punishments case. *Id.* at 103, 937 P.2d at 944. The ICA noted that *Lessary* was distinguishable, inasmuch as *Lessary* "did not indicate ... that the same conduct test was to be applied to multiple punishment situations[.]" *Id.* at 102, 937 P.2d at 943. The ICA then turned to *State v. Mendonca*, 68 Haw. 280, 711 P.2d 731 (1985), "a multiple punishments case[,]" to divine a double jeopardy test for such circumstances. *See id.* The ICA, relying on *Mendonca* and *State v. Pia*, 55 Haw. 14, 514 P.2d 580 (1973), concluded that "[t]he Hawai'i test [for multiple punishments cases] thus adopts the *Blockburger* rule and adds thereto a requirement that the law defining each of the offenses is intended to prevent a substantially different harm or evil." *Id.* at 103, 937 P.2d at 944 (internal quotation marks and citation omitted). Notably, however, *Mendonca* itself lacks thorough double jeopardy analysis and *Pia* seems to rely primarily on statutory language at least with regard to multiple punishments cases. *See Pia*, 55 Haw. at 18, 514 P.2d at 584. Significantly, both *Mendonca* and *Pia* preceded *Lessary*.

*Alabama v. Smith,* 490 U.S. 794 [109 S.Ct. 2201, 104 L.Ed.2d 865] (1989) ]. The first two situations deal with successive prosecutions, while the third situation deals with multiple punishments.

*Id.* at 392, 967 P.2d at 224. The *Ake* court, referring to *Lessary,* confirmed that this court had adopted the "same conduct" test set forth in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), later overruled in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), as the test to apply to successive prosecution situations under the Hawai'i Constitution's double jeopardy provision:

> In the successive prosecutions context, this court has adopted the "same conduct" test as the general standard under the Double Jeopardy Clause of the Hawai'i Constitution. In *State v. Lessary,* 75 Haw. 446, 865 P.2d 150 (1994), we held that, "[u]nder the 'same conduct' test, prosecution of [a] charge is barred if the State, to establish the conduct element of [that offense], will prove acts of the defendant on which the State relied to prove the conduct element of [another] offense for which [the defendant] had already been prosecuted." *Id.* at 460, 865 P.2d at 157.

*Ake,* 88 Hawai'i at 392–93, 967 P.2d at 224–25. Indeed, in *Lessary,* this court rejected the *Blockburger* test as not controlling under our state constitution, at least in cases of successive prosecutions. *See Lessary,* 75 Haw. at 457, 865 P.2d at 155 ("[W]e conclude that the interpretation given to the double jeopardy clause by the United States Supreme Court in *Dixon* does not adequately protect individuals from being 'subject for the same offense to be twice put in jeopardy.' ").[10] This court also observed that the federal courts apply *Blockburger* to multiple

punishments cases. *See Ake,* 88 Hawai'i at 393 n. 7, 967 P.2d at 225 n. 7.

The threshold question under *Blockburger* is whether the legislature intended to punish both offenses. *See Lessary,* 75 Haw. at 454, 865 P.2d at 154. The plurality and Justice Levinson's concurring opinions, by addressing the legislature's intent, appear to apply *Blockburger* rather than *Lessary* to this multiple punishments case. *See* Plurality opinion at 99 Hawai'i at 468, 56 P.3d at 1257; Concurring opinion of Levinson, J., at 1259, 56 P.3d at 470. But in doing so, the concurring opinion specifically relies on federal case law only. *See id.* at 464, 56 P.3d at 1253. As mentioned, the test to be applied in such a circumstance still has not been analytically addressed in this jurisdiction. Thus, the plurality's position can only be interpreted as resting on federal, rather than state, constitutional grounds. While Justice Levinson maintains that "the core *Jumila* analysis" is not overruled, *see* concurring opinion of Levinson, J. at 472–473, 56 P.3d at 1261–1262, neither he nor the plurality opinion indicates how that core is maintained. The result is to obfuscate rather than to clarify the status of double jeopardy jurisprudence in this jurisdiction.

## X.

Considering that *Jumila* explicitly did not address any constitutional double jeopardy protection, Defendant's reliance on *Jumila* below did not amount to a claim that his double jeopardy rights would be violated by the imposition of dual convictions pursuant to HRS 134–6(a) and a predicate felony. The plurality's determination, then, that Defendant's double jeopardy rights are not violated in such an instance, is made without the benefit of Defendant's position. Prudence and fair play mandate that, before we deter-

---

**10.** The *Ake* court observed that the double jeopardy test to be applied under the Hawai'i Constitution differed from that adopted by the United States Supreme Court—the "same elements" or "*Blockburger*" test.

The United States Supreme Court, however, has adopted the "same elements" test, originally described in *Blockburger v. United States,* 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932), as the standard under the Double Jeopardy Clause of the United States Constitution.

> *See United States v. Dixon,* 509 U.S. 688 [113 S.Ct. 2849, 125 L.Ed.2d 556] (1993) (overruling *Grady v. Corbin,* 495 U.S. 508 [110 S.Ct. 2084, 109 L.Ed.2d 548] (1990), and returning to the "same elements" test). "[T]he test to be applied to determine whether there are two offenses or only one, is whether each requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304 [52 S.Ct. 180]. *Ake,* 88 Hawai'i at 393, 967 P.2d at 225 (brackets in original).

mine that state action does not violate a defendant's constitutional rights, we allow him or her the opportunity to address the question involved. *Cf. State ex rel. Oklahoma Bar Ass'n v. Smolen,* 837 P.2d 894, 903 (Okla.1992) (Opala, C.J., concurring) ("If no constitutional challenge has been advanced, the dictates of fairness are not impugned by the court's denial of *sua sponte* consideration. 'We do not reach for constitutional questions not raised by the parties.' " (Quoting *Mazer v. Stein,* 347 U.S. 201, 206 n. 4, 74 S.Ct. 460, 98 L.Ed. 630 (1954), *superseded by statute on other grounds as stated in Fabrica, Inc. v. El Dorado Corp.,* 697 F.2d 890 (9th Cir.1983). (Other citations omitted.))). Thus, in my view, remanding this case to allow Defendant the opportunity to be heard on the constitutional double jeopardy issue and the court and the parties to generate a record germane to that issue is the only appropriate disposition in the wake of the plurality's decision to overrule *Jumila* on statutory grounds.

## XI.

For the reasons above, I do not agree that *Jumila* should be overruled, because the plurality has failed to establish a "compelling justification" for doing so. Even if the statutory basis for the *Jumila* holding is overruled by the plurality, in my view, this case should be remanded to allow the parties an opportunity to be heard on whether double jeopardy principles would bar Defendant's dual convictions for second degree murder and for the firearms conviction under HRS § 134–6(a) and to create a relevant record for our review.