GRAHAM CONSTRUCTION SUPPLY, INC., Plaintiff-Appellant, *v.* SCHRADER CONSTRUCTION, INC., Defendant, and CONTRACTOR'S LICENSE BOARD, Intervenor-Appellee

NO. 6873

CIVIL NO. H77-480

AUGUST 24, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The question is whether a supplier of building materials is barred from collecting the amount of a judgment rendered against a building contractor from a special fund maintained by the Contractors License Board because of a subsequent statutory amendment that limits the class of persons entitled to payment therefrom to owners or lessees of private premises. We conclude that recovery is not precluded by the amendment.

# I.

## A.

Building contractors in Hawaii have been subject to licensing and regulation since 1957 when the Contractors License Board (hereafter the Board) was established.[1] In 1973, the Board was "authorized and directed to establish and maintain a contractors recovery fund from which any person aggrieved by an act, representation, transaction, or conduct of a duly licensed contractor" in violation of the licensing law or the regulations of the Board could recover damages which would be uncollectible otherwise.[2] Although the relevant legislative history contained a suggestion that the recovery fund's intended beneficiaries were to include "homeowners and bona fide subcontractors,"[3] the Board nevertheless followed the plain and clear wording of the law in its administration and sanctioned payments to "any person aggrieved" by an impecunious contractor's transgressions, including suppliers of building mate-

---

[1]  c. 305, S.L.H. 1957, subsequently codified as part of HRS Chapter 444.

[2]  c. 170, S.L.H. 1973, subsequently codified as part of HRS Chapter 444, provided in part:

> The contractors license board is authorized and directed to establish and maintain a contractors recovery fund from which any person aggrieved by an act, representation, transaction, or conduct of a duly licensed contractor, which is in violation of the provisions of this chapter or the regulations promulgated pursuant thereto, may recover by order of the circuit court or district court of the county where the violation occurred, an amount of not more than $10,000 for damages sustained by the act, representation, transaction or conduct. Recovery from the fund shall be limited to the actual damages suffered by the claimant.
>
> Every contractor, when renewing his license in 1974, shall pay in addition to his license renewal fee, a fee of $50 for deposit in the contractors recovery fund. On or after May 1, 1974, when any person makes application for a contractors license he shall pay, in addition to his original license fee, a fee of $50 for deposit in the contractors recovery fund. In the event that the contractors license board does not issue the license, this fee shall be returned to the applicant.

[3] *See* Hse. Stand. Comm. Rep. No. 170, in 1973 House Journal, at 830 and Sen. Stand. Comm. Rep. No. 590, in 1973 Senate Journal, at 898.

rials. In 1977, the critical phrase was amended to read "any person injured" and the term was expressly defined to cover only "owners or lessees of private residences."[4] The amendatory legislation's effective date was May 31, 1977.

Act 170, S.L.H. 1973, the enabling legislation for the establishment and maintenance of the contractors recovery fund (hereafter the fund) also prescribed a comprehensive special procedure for the receipt of benefits therefrom. *See* HRS § § 444-28 to 34. The procedural requisites include an initial notice to the Board contemporaneously with the filing of suit against the errant contractor to facilitate intervention and defense of the action by the Board itself if it deems this necessary and feasible to protect the fund's integrity. They also call for reasonable "searches and inquiries" subsequent to judgment to determine if the defaulting contractor possesses assets that possibly could be applied in satisfaction of his debt. And it is only after all reasonable attempts to satisfy the debt have culminated in failure that a claimant may seek a court order directing payment of the debt from the fund.

---

[4] As amended by c. 127 and c. 152, S.L.H. 1977, HRS § 444-26 reads:

The contractors license board is authorized and directed to establish and maintain a contractors recovery fund from which any person injured by an act, representation, transaction, or conduct of a duly licensed contractor, which is in violation of the provisions of this chapter or the regulations promulgated pursuant thereto, may recover by order of the circuit court or district court of the county where the violation occurred, an amount of not more than $10,000 for damages sustained by the act, representation, transaction or conduct. Recovery from the fund shall be limited to the actual damages suffered by the claimant, including court costs and fees as set by law, and reasonable attorney fees as determined by the court; provided that recovery from the fund shall not be awarded to persons injured by an act, representation, transaction, or conduct of a contractor whose license was in an inactive status at the time of the injury.

For purposes of this chapter, "person injured" means and is limited to owners or lessees of private residences, including condominium or cooperative units, who have contracted with a duly licensed contractor for the construction of improvements or alterations to their own private residences.

Every contractor, when renewing his license in 1974, shall pay in addition to his license renewal fee, a fee of $50 for deposit in the contractors recovery fund. On or after May 1, 1974, when any person makes application for a contractors license he shall pay, in addition to his original license fee, a fee of $150 for deposit in the contractors recovery fund. In the event that the contractors license board does not issue the license, this fee shall be returned to the applicant.

## B.

Plaintiff-appellant Graham Construction Supply, Inc. (hereafter Graham) filed a complaint in the District Court of the First Circuit against Schrader Construction, Inc. (hereafter Schrader), a general contractor, on February 4, 1977, alleging the existence of a debt for building materials furnished. The Board, intervenor-appellee here, was duly notified of the action. A judgment in favor of Graham was entered shortly thereafter by default. A subsequent examination of an officer of Schrader pursuant to an Order of Examination of Person Having Knowledge revealed the only possible source for a realization of funds to satisfy the judgment debt was a bonding agreement executed by Builders Bonding, Inc. But the attempt to obtain payment from the bonding company bore no fruit. That Graham pursued its claim with diligence is substantiated by a record that discloses the filing of a complaint on February 4, 1977, the entry of a judgment on March 21, 1977, an examination of the judgment debtor, with Board participation, on April 5, 1977, and the entry of a garnishee order against Builders Bonding, Inc. and service thereof on May 13, 1977.

After these efforts produced no tangible results, Graham filed a motion for an order directing payment from the fund on September 27, 1977. The Board resisted the motion on the ground that the intervening statutory amendment precluded payment to Graham. The district court, concluding that the fund was designed to benefit only owners and lessees of private residences who contracted with licensed contractors for the construction of improvements or alterations of such structures, denied the motion on October 25, 1977. Graham's timely appeal to this court followed.

## II.

Graham views the district court's ruling as a retroactive application of the statutory amendment which contravenes a legislatively adopted canon of statutory construction that laws are applied pros-

pectively in the absence of a clear expression to the contrary.[5] It further asserts a related statutory provision effectively preserved its claim despite the critical alteration of HRS § 444-26.[6] The Board perceives the collection of an otherwise uncollectible judgment against a contractor from the fund as a "two-tiered" process, a first phase consisting of the procurement of a valid judgment against a Board licensee plus the exhaustion of normal collection procedures and a discrete second phase consisting of the filing of a claim against the fund and the court's entry of a payment order. As Graham did not commence the second stage of its collection effort prior to May 31, 1977, the Board maintains an allowance of the claim would infringe the same principle Graham relies on, that statutes are applied prospectively unless a contrary intent appears. Our perception of the relevant provisions of HRS Chapter 444, HRS § 1-3, and the consequence of the pertinent statutory change is more in harmony with Graham's view than with the Board's.

## A.

Act 170, S.L.H. 1973, created a private right of action and a remedy for breaches of the law regulating the conduct of contractors. The remedy was made enforceable against a special fund maintained by the Contractors License Board and financed through fees paid by its licensees if a defaulting contractor was unable to respond in damages.[7] And all of the procedural requisites for claiming benefits from the fund commencing with contemporaneous

---

[5] HRS § 1-3 states:

No law has any retrospective operation, unless otherwise expressed or obviously intended.

[6] HRS § 1-10, a general saving statute, reads:

The repeal of any law shall not affect any act done, or any right accruing, accrued, acquired, or established, or any suit or proceedings had or commenced in any civil case, before the time when the repeal takes effect.

[7] The following excerpt from a relevant legislative committee report provides an insight into its purpose and intent, as well as some of its principal provisions:

The purpose of this bill is to establish a contractors recovery fund from which any person damaged by an act, representation, transaction, or conduct of a duly licensed contractor, violative of the provisions of chapter 444 of the Hawaii Revised Statutes or regulations promulgated pursuant thereto, may recover for

notice to the Board of the original pleading were spelled out. The provisions of the Act thus clearly constituted a unitary scheme to afford a measure of protection where the ordinary civil remedies were inadequate. The suggested "two-tiered" approach is incompatible with this comprehensive statutory plan, and we find the Board's argument unpersuasive.

The argument is that Graham acquired no "right" exercisable against the fund at any time prior to May 31, 1977; it merely gained a "non-vested privilege" of asserting a claim when it secured a judgment against Schrader. The Board considers a "retrospective law" as one that abolishes or impairs "vested rights," and such rights, it implies, are those arising at the conclusion of a case. But "retrospective law" undoubtedly has a broader meaning, as Mr. Justice Story's definition of the term indicates. It "has become a classic and is as follows: 'Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective. (2 Story, *Constitution,* § 1398.)' " *Employees Retirement System v. Chang,* 42 Haw. 532, 535 (1958).

Here, the underlying debt to Graham and the judgment against Schrader were transactions or considerations already past that gave rise to a right on Graham's part to seek payment from the fund before the redefinition of the beneficiary class. But for the amendment, the Board would not have objected to an order of payment.[8]

---

such damages.

The provisions of this bill are patterned after the real estate recovery fund which presently indemnifies victims of real estate brokers and salesman [sic]. Like the real estate recovery fund, the contractors recovery fund is financed by licensees and a single recovery is allowed, which is limited to actual damages suffered or $10,000, whichever is less, provided, however, that the underlying dispute has been decided by a court of law. The bill further establishes a period within which an action must be commenced, procedures to follow for recovery from the fund, management of the fund, the right of the contractors license board to be subrogated to the rights of the judgment creditor, and so forth.

Sen. Stand. Comm. Rep. No. 590, *supra. See also* Sen. Stand. Comm. Rep. No. 733, in 1973 Senate Journal, at 935-36, to similar effect.

[8] The record of proceedings below manifests the Board's resistance of Graham's motion for a payment order was premised entirely on the passage and approval of c. 127, S.L.H. 1977, prior to the filing of the motion.

The motion for such order was resisted because of an awareness that a new disability with regard to Graham's right of action might have been imposed by an intervening statutory amendment. And in permitting the new disability to reach Graham's claim, the district court gave the restrictive definition of the beneficiary class retroactive effect.

### B.

But "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." HRS § 1-3; *Molokai Homesteaders Cooperative Association v. Cobb,* 63 Haw. 453, 469, 629 P.2d 1134, 1137 (1981); *Hun v. Center Properties,* 63 Haw. 273, 282-83, 626 P.2d 182, 188-89 (1981); *Roe v. Doe,* 59 Haw. 259, 264, 581 P.2d 310, 314 (1978). Our task then is to ascertain whether there is an expression or obvious intendment that the amendment was to have "any retrospective operation."

We begin, as we must, by examining the language of Act 127, S.L.H. 1977, and see nothing expressing an intention that the new limitation was to apply to existing rights of action. Undaunted by this fact, the Board further argues relevant legislative history demonstrates suppliers of building materials were never intended beneficiaries of HRS § 444-26 and Act 127, S.L.H. 1977 did "no more than to clarify" the original intention of the foregoing section. Hence, it maintains there was no "withdrawal" of even a privilege of which Graham may now complain. Our attention is directed to a legislative committee report stating in part:

> Your Committee wishes to reiterate that the original intent of the contractors recovery fund was to protect owners or lessees of private residences and them only. The only instances where the legislature intended a person other than an owner or lessee to recover from the fund was where he might be directly affected such as in the case where a subcontractor obtains a mechanics lien after the owner or lessee has paid the contractor for such services.

Conf. Comm. Rep. No. 15, in 1977 House Journal, at 1237-38. Yet as we have observed, the expansive language of Act 170, S.L.H. 1970, and the committee reports issued in conjunction with its passage spoke in terms of "any person" aggrieved or damaged by a contrac-

tor's act in violation of the licensing law being able to recover damages from the fund.[9] And while two of the reports contained statements that the legislation would "give protection to homeowners and bona fide subcontractors not now available,"[10] nothing in any of the reports supports the after-the-fact declaration that "the original intent of the contractors recovery fund was to protect owners or lessees of private residences and them only." This bald statement can hardly be considered a mere clarification of "the original intent." Nor can it be deemed an obvious expression of an intent to apply the amendment retrospectively to the detriment of parties who had been declared beneficiaries earlier in clear and unequivocal terms. Thus, we are unable to detect an expression that would support a retroactive application of the amendment.

We also do not find it necessary to reach the question related to the general saving statute. The order of the district court denying Graham's motion for an order of payment from the fund is reversed, and the case is remanded for the entry of an order consistent with this opinion.

*Edward C. Kemper (Kemper & Watts,* of counsel) for plaintiff-appellant.

*Benjamin M. Matsubara (Dale W. Lee* with him on the brief; *Ukishima & Matsubara,* of counsel) for intervenor-appellee.

---

[9] The report from the House Committee on Consumer Protection read in part:
The purpose of this bill is to establish a contractors recovery fund from which any person damaged by any act of a duly licensed contractor may seek restitution.
Hse. Stand. Comm. Rep. No. 98, in 1973 House Journal, at 790-91.

The House Committee on Judiciary stated the legislation's purpose as follows:
The purpose of this bill is to establish a contractors recovery fund from which any person damaged by an act, representation, transaction, or conduct of a duly licensed contractor, violative of the provisions of chapter 444 of the Hawaii Revised Statutes or regulations promulgated pursuant thereto, to recover for such damages.
Hse. Stand. Comm. Rep. No. 170, in 1973 House Journal, at 830.

The Senate Committee on Judiciary followed the House Committee on Judiciary and reiterated the purpose of the legislation in similar language, as did the Senate Committee on Ways and Means. *See* Sen. Stand. Comm. Rep. No. 590, *supra,* and Sen. Stand. Comm. Rep. No. 733, in 1973 Senate Journal, at 935-36.

[10] *See* Hse. Stand. Comm. Rep. No. 170, *supra,* and Sen. Stand. Comm. Rep. No. 590, *supra.*