65 P.3d 134

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Justin VAN DEN BERG, Defendant–Appellant.**

**State of Hawai'i, Plaintiff–Appellee,**

v.

**Gary G. Karagianes, Defendant–Appellant.**

Nos. 23135, 22931.

Supreme Court of Hawai'i.

March 17, 2003.

Michael K. Tanigawa and Keith S. Agena (of Char Sakamoto Ishii Lum & Ching), Honolulu, on the briefs, for defendant-appellant Justin Van den Berg in Appeal No. 23135.

Anthony L. Ranken, Wailuku, on the briefs, for defendant-appellant Gary G. Karagianes in Appeal No. 22931.

Richard K. Minatoya, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee in Nos. 22931 & 23135.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ., and Circuit Judge HIRAI, assigned by reason of vacancy; ACOBA, J., concurring separately.

Opinion of the Court by MOON, C.J.

Inasmuch as the legal issues presented by appeal Nos. 23135 and 22931 are identical, we consolidate these appeals for purposes of disposition. In appeal No. 23135, defendant-appellant Justin Van den Berg appeals from: (1) the December 30, 1999 order granting plaintiff-appellee State of Hawaii's (the prosecution) motion to reconsider the reversal of Van den Berg's firearms conviction, which effectively reinstated the firearms conviction; and (2) the February 17, 2000 order denying Van den Berg's request that the mandatory minimum sentence on his second degree murder conviction, imposed in conjunction with the separate sentence on his firearms conviction, be vacated on double jeopardy grounds because the mandatory minimum sentence was predicated upon the single use of a firearm. Both orders were entered by the Honorable Joseph Cardoza.

In appeal No. 22931, defendant-appellant Gary Karagianes similarly appeals from the September 29, 1999 order denying his motion to (1) reverse his firearms conviction and (2) vacate the mandatory minimum sentence on his second degree murder conviction on double jeopardy grounds. The September 29, 1999 order was entered by the Honorable Shackley Raffetto.

For the reasons set forth below, we reverse the firearms convictions of both Van den Berg and Karagianes [hereinafter, collectively, Appellants].

## I. BACKGROUND

### A. Van den Berg

On November 14, 1996, the Intermediate Court of Appeals affirmed Van den Berg's convictions of: (1) murder in the second degree; (2) possession or use of a firearm in the commission of a felony, in violation of Hawaii Revised Statutes (HRS) § 134–6(a) (1990)[1] [hereinafter, the HRS § 134–6(a) or firearms conviction]; and (3) carrying a pistol or revolver without a license. *State v. Vandenberg*, 84 Hawai'i 101, 929 P.2d 114 (App.1996) (mem.). As a result, Van den Berg continued to serve his sentences of: (1) life imprisonment, with the possibility of parole, for second degree murder, with a mandatory minimum term of fifteen years, imposed pursuant to HRS § 706–660.1 (1990);[2]

---

1. HRS § 134–6(a) states in relevant part:
 **Possession or use of firearm in the commission of a felony; place to keep firearms; loaded firearms; penalty.** (a) It shall be unlawful for a person to knowingly possess or intentionally use or threaten to use a firearm while engaged in the commission of a felony, whether the firearm was loaded or not, and whether operable or not.

2. HRS § 706–660.1 was amended in 1990 and states in relevant part:
 (a) A person convicted of a felony, where the person had a firearm in his possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:
 (1) For murder in the second degree and attempted murder in the second degree—up to fifteen years;
 (2) For a class A felony—up to ten years;

(2) twenty years for the firearms conviction, with a mandatory minimum term of ten years; and (3) ten years for the carrying without a license conviction.

On August 16, 1999, the circuit court granted Van den Berg's "Motion to Correct Illegal Sentence" (First Motion to Correct) and reversed his firearms conviction, pursuant to *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998). Thereafter, the prosecution filed a motion for reconsideration of the reversal of the Van den Berg's firearms conviction. After several hearings, the circuit court, on December 30, 1999, granted the prosecution's motion and denied Van den Berg's First Motion to Correct, effectively reinstating his firearms conviction.

On November 26, 1999, Van den Berg filed another "Motion to Correct Illegal Sentence," arguing that double jeopardy principles prohibited the imposition of: (1) a mandatory minimum term of imprisonment on the firearms conviction; and (2) a mandatory minimum term of imprisonment on the second degree murder conviction in conjunction with a separate sentence for the firearms conviction when the mandatory minimum sentence was predicated upon the same use of a firearm upon which the firearms conviction was based. On February 17, 2000, the circuit court agreed, in part, and vacated the mandatory minimum term of imprisonment for the firearms conviction; however, the court affirmed the mandatory minimum sentence for the second degree murder conviction and the separate sentence for the firearms conviction. Van den Berg timely appealed.

### B. *Karagianes*

On January 12, 1996, this court affirmed the convictions of Karagianes for murder in the second degree and possession or use of firearm in the commission of a felony [hereainfter, the HRS § 134–6(a) or firearms conviction]. *State v. Karagianes*, 80 Hawai'i 357, 910 P.2d 128 (Haw. 1996) (mem.). As a result, Karagianes continued to serve his sentences of: (1) life imprisonment, with the possibility of parole, for second degree mur-

(3) For a class B felony—up to five years; and

der, with a mandatory minimum term of fifteen years, imposed pursuant to HRS § 706–660.1; and (2) ten years of imprisonment for the firearms conviction.

Like Van den Berg, Karagianes, on May 11, 1999, moved to have his firearms conviction reversed pursuant to *Jumila* and, on June 8, 1999, moved to vacate the fifteen-year mandatory minimum sentence imposed on the second degree murder conviction based on double jeopardy grounds. Both motions were consolidated for hearing, and, on September 29, 1999, the circuit court denied both motions. Karagianes timely appealed.

## II. *STANDARDS OF REVIEW*

### A. *Statutory Interpretation*

 "The question whether a defendant can be convicted of both carrying or use of firearm in the commission of a separate felony and the separate felony is a question of statutory interpretation. We interpret statutes de novo." *State v. Brantley*, 99 Hawai'i 463, 464, 56 P.3d 1252, 1253 (2002) (citing *State v. Cornelio*, 84 Hawai'i 476, 483, 935 P.2d 1021, 1028 (1997) (citations omitted)).

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [(1993)]. Moreover, the courts may resort to extrinsic aids in

(4) For a class C felony—up to three years.

determining legislative intent. One avenue is the use of legislative history as an interpretive tool. *Gray [v. Administrative Director of the Court,* . 84 Hawai'i 138, 148, 931 P.2d 580 (1997) (quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) . . . (some brackets omitted and ellipses points added and some in original).

*Brantley,* 99 Hawai'i at 464–65, 56 P.3d at 1253–54 (quoting *State v. Rauch,* 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000)).

## B. *Retroactivity*

◼ The Constitution neither prohibits nor requires retrospective effect. . . . Free to apply decisions with or without retroactivity, the Court's task is to exercise its discretion, weighing the merits and demerits of retroactive application of the particular rule. . . . In making [those] determination[s], the [United States Supreme] court (sic) has given consideration to three factors: (a) the purpose to be served by the newly announced rule, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

3. The section of the 1993 version of HRS § 701–109 is virtually identical to the 1985 version that was applicable in Appellants' cases and provides in relevant part:

(1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:

*State v. Ikezawa,* 75 Haw. 210, 220, 857 P.2d 593, 598 (1993) (quoting *State v. Santiago,* 53 Haw. 254, 268–69, 492 P.2d 657, 665–66 (1971) (citations omitted) (some ellipses points added and some in original) (internal brackets and notations in original)).

## III. *DISCUSSION*

### A. *The Firearms/HRS § 134–6(a) Convictions*

◼ Appellants contend that the circuit court erred by failing to apply *Jumila* pursuant to the doctrine of *stare decisis* and refusing to reverse their convictions and sentences for violating HRS § 134–6(a).

In *Jumila,* this court stated that the underlying felony to HRS § 134–6(a), *i.e.* murder in the second degree, will always be established by proof of the same or less than all the facts required to establish the commission of the HRS § 134–6(a) offense, and, therefore, the underlying felony was an included offense of HRS § 134–6(a). *Jumila,* 87 Hawai'i at 3, 950 P.2d at 1203. Under HRS § 701–109 (1993),[3] a defendant may not be convicted of more than one offense if one of those offenses is included within another. We concluded that, although the legislature· could create an exception to the statutory prohibition set forth in HRS § 701–109, the legislature had not clearly done so when it enacted HRS § 134–6(a). *See id.* at 5, 950 P.2d at 1205. We further stated that

[w]e have found no indications in the language of HRS § 134–6(a) or the legislative history *preceding its original enactment in 1990* to suggest[ ] that the legislature intended that an individual could be convicted of both an HRS § 134–6(a) offense and its underlying felony or that the legislature otherwise intended to create an exception to HRS § 701–109. . . .

(a) One offense is included in the other, as defined in subsection (4) of this section[.]

Subsection (4) provides in relevant part:

(4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]

*Id.* (emphasis added). Therefore, "[i]n light of the attenuated legislative history in this regard," we held that a defendant could not be convicted of both the HRS § 134–6(a) offense and the separate, underlying felony and reversed the defendant's HRS § 134–6(a) conviction. *Id.*

The aforementioned holding in *Jumila* was subsequently overruled by this court in *Brantley*, based upon our recognition that the language of HRS § 134–6(a) at issue in both *Jumila* and *Brantley* was the language that existed as a result of the *1993 amendments* to the statute.[4] *Brantley*, 99 Hawai'i at 469, 56 P.3d at 1258. The amendments and legislative history leading up to the *1993 version* of HRS § 134–6(a) (1993 Statute), under which the defendant in *Jumila* was charged, set forth substantive changes that belied the holding in *Jumila*. Therefore, we concluded in *Brantley* that, when considering "the language of [HRS § 134–6(a)] and the legislative understanding embedded in the 1993 amendments that conviction of both offenses was permitted, we are convinced that the legislature intended to permit convictions of both HRS § 134–6(a) and the separate felony at the time of Brantley's conviction." *Id.*

Additionally, Section 2 of Act 239, which amended HRS § 134–6(a) in 1993, expressly stated that the amendments to the act were *not* to "affect rights and duties that matured, penalties that were incurred, and *proceedings that were begun, before its effective date.*" 1993 Haw. Sess. L. Act 239 § 2, 419 (emphasis added). The 1993 amendments to HRS § 134–6(a) became effective on June 18, 1993. *Id.*

In the present case, the record indicates that Appellants' respective proceedings were "begun" before June 18, 1993:(1) Van den Berg was indicted on October 25, 1991, his trials were conducted in 1992 and 1993, and he was convicted on May 5, 1993; and (2) Karagianes was charged on July 8, 1992, his trials were held in 1992 and 1993, and he was convicted on September 15, 1993. Because the proceedings involving Appellants *began prior to the effective date* of Act 239, the 1993 Statute *did not* apply to Appellants. Consequently, neither *Brantley* nor *Jumila*, which interpreted the 1993 Statute, is dispositive of the present case. Notwithstanding the above, the core legal analysis in both *Brantley* and *Jumila* is still good law and applicable to the discussion in this case.

This court has not previously interpreted the scope of the original 1990 version of HRS § 134–6(a) [hereinafter, the 1990 Statute]. *See State v. Ganal*, 81 Hawai'i 358, 371, 917 P.2d 370, 383 (1996) (noting that, at the time of the opinion, this court had never interpreted the scope of the original version of HRS § 134–6(a)). We recognize, however, that, in 1992, this court did state that

> [t]he legislature has chosen to make the use of a firearm in the commission of a felony the basis for enhanced sentencing for that felony, and it has also chosen to make such use a separate felony, but it clearly has not chosen to impose two mandatory minimum sentences for one use of a gun.

*State v. Ambrosio*, 72 Haw. 496, 497–98, 824 P.2d 107, 108, *reconsideration denied*, 72 Haw. 616, 829 P.2d 859 (1992). Thus, al-

---

4. HRS § 134–6(a)(1993) states in relevant part (brackets indicate material deleted from the 1990 version and underscoring indicate material added by the 1993 amendment):

> [Possession] *Carrying* or use of firearm in the commission of a *separate* felony; place to keep firearms; loaded firearms; penalty. (a) It shall be unlawful for a person to knowingly [possess] *carry on the person or have within the person's immediate control* or intentionally use or threaten to use a firearm while engaged in the commission of a *separate* felony, whether the firearm was loaded or not, and whether operable or not[.]; *provided that a person shall not be prosecuted under this subsection where the separate felony is:*

> *(1) A felony offense otherwise defined by this chapter;*
> *(2) The felony offense of reckless endangering in the first degree under section 707–713;*
> *(3) The felony offense of terroristic threatening in the first degree under section 707–716(a), 707–716(b), and 707–716(d); or*
> *(4) The felony offenses of criminal property damage in the first degree under section 708–820 and criminal property damage in the second degree under 708–821 and the firearm is the instrument or means by which the property damage is caused.*

1993 Haw. Sess. L. Act 239, § 1 at 418.

though the 1990 Statute was applicable in *Ambrosio,* we also recognize that the court in that case made no inquiry into or analysis of the statutory language or legislative intent of HRS § 134–6(a), but, instead, examined the statutory language of HRS § 706–660.1. Consequently, *Ambrosio* does not stand for the proposition that, in 1990, the legislature clearly intended for a defendant to be convicted of both HRS § 134–6(a) and the underlying felony.

As previously noted, the original 1990 version of HRS 134–6(a) states:

> **Possession or use of firearm in the commission of a felony; place to keep firearms; loaded firearms; penalty.** (a) It shall be unlawful for a person to knowingly possess or intentionally use or threaten to use a firearm while engaged in the commission of a felony, whether the firearm was loaded or not, and whether operable or not.

1990 Haw. Sess. L. Act 195, § 2 at 422 (codified at HRS § 134–6(a) (1990)). Act 195 also specified that "[a]ny person violating this section by possession, using or threatening to use a firearm while engaged in the commission of a felony shall be guilty of a class A felony." *Id.* (codified at HRS § 134–6(d) (1990)). The plain language of the 1990 Statute requires the actual commission of an underlying felony, all the elements of which the prosecution must prove in order to convict a defendant of violating HRS § 134–6(a). Because the underlying felony to HRS § 134–6(a) is always established by proof of the same or less than all the facts required to establish the HRS § 134–6(a) offense, the underlying felony is, as a matter of law, an included offense of the HRS 134–6(a) offense. *See* HRS § 701–109(4)(a). Therefore, because HRS § 701–109 prohibits the imposition of separate sentences for both an offense and an offense included therein, *unless* there is clear legislative intent to create an exception to the statutory prohibition, a defendant may not be sentenced for both the HRS § 134–6(a) offense and the underlying felony. The language of the 1990 Statute does not indicate that the legislature intended to create an exception to HRS § 701–109. In *Brantley,* we observed that the *substantive*

changes to the language of the 1993 Statute created an ambiguity in HRS § 134–6(a) with respect to whether the legislature intended to abrogate the general prohibition in HRS § 701–109 against convictions of both HRS § 134–6(a) and the underlying, separate felony. We, therefore, turned to the legislative history for guidance and concluded that the legislature did intend to permit dual convictions. In contrast, the language of the 1990 Statute does not suggest any ambiguity.

In the absence of a clear legislative intent to create an exception to the statutory prohibition in HRS § 701–109, we abide by the plain language of HRS § 134–6(a) and HRS § 701–109, which, as discussed above, prohibits separate sentences for both an offense and an offense included therein. We, therefore, hold that the original 1990 enactment of HRS § 134–6(a) prohibited the conviction of a defendant for both an HRS § 134–6(a) offense and its underlying felony.

Based on the foregoing, we reverse Appellants' convictions of and sentences for the HRS § 134–6(a) offense.

### B. *HRS § 706–660.1*

In light of our reversal of their respective convictions and sentences on the HRS § 134–6(a) charge, we need not address Appellants' arguments that double jeopardy principles bar the imposition of sentences on both the HRS § 134–6(a) conviction and the mandatory minimum term of imprisonment on the second degree murder conviction, pursuant to HRS § 706–660.1 based on the single use of a firearm.

### Concurring Opinion by ACOBA, J.

I concur in the result but on different grounds.

In appeals from separate cases involving the use of firearms in the commission of second degree murder, Defendants–Appellants Justin Van Den Berg and Gary G. Karagianes urge this court to vacate their companion convictions under Hawaii Revised Statutes (HRS) § 134–6 (Supp.1990), possession or use of a firearm in the commission of a felony (*i.e.,* the underlying murder), or, in the alternative, to vacate their mandatory

minimum sentences imposed under HRS § 706–660.1 (Supp.1990) for use of a firearm in committing murder.[1] As to vacation of their HRS § 134–6 convictions, both rely on *State v. Jumila,* 87 Hawai'i 1, 950 P.2d 1201 (1998), decided subsequent to their cases. In *Jumila,* this court held that a defendant could not be convicted under HRS § 134–6 for the use of a firearm in the commission of a felony and for the underlying felony.

### I.

I agree with Defendant Van Den Berg that the trial court was required, under the doctrine of *stare decisis,* to follow *Jumila* at the time Van Den Berg brought his motion to correct sentence because it was controlling precedent. *See State v. Brantley,* 99 Hawai'i 463, 483, 56 P.3d 1252, 1272 (2002) (Acoba, J., dissenting) (stating that *"Jumila's* construction of § 134–6(a) was applicable and binding on trial courts" and that "it is the duty of all inferior tribunals to adhere to [an appellate] decision, without regard to their views as to its propriety, until the decision has been reversed or overruled by the court of last resort" (citations omitted)). However, after the instant appeals were taken, a plurality of this court in *Brantley* overruled *Jumila* and held that a defendant may be convicted of both the predicate felony such as murder, and the use of a firearm in the commission of that felony. *See id.* at 464, 56 P.3d at 1253. Accordingly, Defendants can no longer successfully argue, relying on *Jumila,* that they cannot be convicted of firearm use and the underlying murder.

It is also evident that neither the later 1993 amendments to HRS § 134–6 made by Act 239, nor the 1999 amendments by Act 12,

apply to either of Defendants, inasmuch as the amendments were adopted after Defendants were indicted, tried, and sentenced. For, each Act provides that it "does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date." 1999 Haw. Sess. L. Act 12, § 2, at 12; 1993 Haw. Sess. L. Act 239, § 2, at 419. It is well established that

> [a]bsent clearly express contrary legislative intent, the well-established rule of statutory construction forbids the retrospective operation of statutes. *See Yamaguchi v. Queen's Medical Ctr.,* 65 Haw. 84, 89, 648 P.2d 689, 693 (1982); *Clark v. Cassidy,* 64 Haw. 74, 77, 636 P.2d 1344, 1346 (1981); *Graham Constr. Supply v. Schrader Constr.,* 63 Haw. 540, 546, 632 P.2d 649, 653 (1981); HRS § 1–3[.]"

*Brantley,* 99 Hawai'i at 482, 56 P.3d at 1271 (Acoba, J., dissenting) (citations omitted).

Moreover, contrary to the court's position, post-*Jumila* legislative reports, which purport to ascribe legislative intent as to the meaning of HRS § 134–6 at the time of the *Jumila* decision are not determinative. "In many instances, subsequent legislatures are comprised of different individuals who were not privy to the intentions of earlier legislators." *Id.* at 481–82, 56 P.3d at 1270–71 (citation omitted). More, importantly, "[r]einterpreting the original intent of a past legislature based on the expressions of a subsequent different legislature 'would make the legislature a court of last resort[,]' [1A. C.] Sands, *Statutory Construction,* § 27.04 [(5th ed.1991)][,] ... plac[ing] the interpretation of statutes, a judicial function, in the hands of the legislature." *Id.* at 483, 56 P.3d at 1272. *See id.* ("After the *Jumila* deci-

---

1. Both Defendants maintain in the alternative that "a defendant may not be convicted of a HRS § 134–6(a) violation and receive a mandatory minimum term of imprisonment on the underlying felony pursuant to HRS § 706–660.1." *State v. Jumila,* 87 Hawai'i 1, 6, 950 P.2d 1201, 1206 (1998). HRS § 706–660.1(1)(a) (Supp.1990) provided in pertinent part:

 A person convicted of a felony, *where the person had a firearm in his possession or threatened its use or used the firearm while engaged in the commission of the felony,* whether the firearm was loaded or not, and whether operable or not, may *in addition to the indeterminate*

 *term of imprisonment* provided for the grade of offense *be sentenced to a mandatory minimum term of imprisonment* without possibility of parole or probation the length of which shall be as follows:

 (a) For murder in the second degree and attempted murder in the second degree—up to fifteen years.

 (Emphases added.) Inasmuch as I agree that Defendants may not be convicted of HRS § 134–6, use of a firearm in a felony, and of the underlying felony committed with the same firearm, I do not discuss the alternative argument.

sion, the legislature, in amending HRS § 134–6(a), could not authoritatively 'clarify' the original intent of the earlier legislature, but could only amend the statute." (Citations omitted.)). Accordingly, only the 1990 version of HRS § 134–6 is relevant to this case.[2]

In light of the reversal of *Jumila,* these appeals squarely present the question of whether double jeopardy applies where a defendant is, in the same case, subject to multiple punishments for the same act, *i.e.,* whether a defendant may be punished separately for murder and for use of a firearm in the commission of that murder. In *Brantley,* that question was never argued at trial or in the appeal briefs. *See Brantley,* 99 Hawai'i at 487, 56 P.3d at 1276 (Acoba, J., dissenting) ("Even if the statutory basis for the *Jumila* holding is overruled by the plurality, ... this case should be remanded to allow the parties an opportunity to be heard on whether double jeopardy principles would bar [Brantley]'s dual convictions for second degree murder and for the firearms conviction under HRS § 134–6(a) and to create a relevant record for our review."). The double jeopardy question is, however, raised here. Defendant Van Den Berg maintains that "the mandatory minimum sentence on Count I violated the double jeopardy clause of the United States and Hawai'i Constitutions as there was no clearly expressed legislative intent in the applicable statutes to allow for cumulative punishment."[3]

## II.

In that regard, HRS § 701–109(1)(a) (1993) does not contain any statutory direction to the effect that the legislature's intent is determinative of whether punishment may be imposed for the included offense as well as the greater offense. HRS § 701–109(1)(a) is plain in its language to the effect that a defendant may not be convicted of both the greater offense and the included one:

> (1) ... The defendant may not ... be convicted of more than one offense if:
>
> (a) One offense is included in the other, as defined in subsection (4) of this section[.]
>
> ....
>
> (4) A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:
>
> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]

Accordingly, insofar as the majority employs a legislative intent analysis, it deviates from the clear language of HRS § 701–109(1)(a), in effect applying a separate rule of review reminiscent of the approach outlined in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Brantley,* 99 Hawai'i at 474, 56 P.3d at 1263 (Ramil, J., concurring, joined by Nakayama, J.) (stating that "[t]he first step in the double jeopardy analysis is to determine whether the legislature intended that each violation be a separate offense[ ]" and, if so, "the court's inquiry is at an end[ ]" and, "[t]herefore, ... the 'lesser included offense' analysis" is misplaced).

Were the double jeopardy test set forth in *Blockburger* to control, "[t]he threshold question ... [would be] whether the legislature intended to punish both offenses." *Id.* at 486, 56 P.3d at 1275 (Acoba, J., dissenting) (citing *State v. Lessary,* 75 Haw. 446, 454, 865 P.2d 150, 154 (1994)). I do not believe such an analysis governs. This court has said that the double jeopardy clause under *our constitution* protects " 'individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second

---

**2.** At the time the charged offenses were committed, the 1990 version of HRS § 134–6(a) was in effect and stated in pertinent part that "[i]t shall be unlawful for a person to knowingly possess or intentionally use or threaten to use a firearm while engaged in the commission of a felony."

**3.** Defendant Karagianes maintains that the test set forth in *Blockburger v. United States,* 284 U.S.

299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is not satisfied with respect to a conviction under HRS § 134–6(a) along with the enhanced sentence imposed under HRS § 706–660.1 for use of a gun. Thus, he argues, there was a double jeopardy violation by virtue of multiple punishments for the same offense. *See supra* note 1.

prosecution for the same offense after conviction; and (3) *multiple punishments for the same offense.'* *State v. Quitog,* 85 Hawai'i 128, 141, 938 P.2d 559, 572 (1997) (quoting *State v. Ontiveros,* 82 Hawai'i 446, 450, 923 P.2d 388, 392 (1996)).... The first two situations deal with successive prosecutions, while the third situation deals with multiple punishments." *Id.* at 485–86, 56 P.3d at 1274–75 (quoting *State v. Ake,* 88 Hawai'i 389, 392, 967 P.2d 221, 224 (1998)) (emphasis added).

Unlike the United States Supreme Court, however, this court in *Lessary* eschewed the *Blockburger* test with respect to successive prosecutions. In its place, our jurisdiction has "adopted the 'same conduct' test set forth in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), later overruled in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), as the test to apply to successive prosecution situations under the Hawai'i Constitution's double jeopardy provision[.]" *Brantley,* 99 Hawai'i at 486, 56 P.3d at 1275 (Acoba, J., dissenting). It was held that the "Hawaii Constitution provides greater protection against multiple prosecutions than does the United States Constitution." *Lessary,* 75 Haw. at 462, 865 P.2d at 157.

In view of this court's embracement of the same conduct test with respect to successive prosecutions, there is no sound basis for applying a different test or application of the words "the same offense" in article I, section 10 of the Hawai'i Constitution to situations implicating multiple punishments. The adverse impact of multiple punishments for the same offense is as far reaching as that resulting from successive prosecutions:

> When multiple charges are brought, the defendant is "put in jeopardy" as to each charge. To retain his freedom, the defendant must obtain an acquittal on all charges; to put the defendant in prison, the prosecution need only obtain a single guilty verdict. The prosecution's ability to bring multiple charges increases the risk that the defendant will be convicted on one or more of those charges. The very fact that a defendant has been arrested, charged, and brought to trial on several charges may suggest to the jury that he

must be guilty of at least one of those crimes. Moreover, where the prosecution's evidence is weak, its ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a compromise verdict. The submission of two charges rather than one gives the prosecution the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.

The Government's argument also overlooks the fact that, quite apart from any sentence that is imposed, each separate criminal conviction typically has collateral consequences, in both the jurisdiction in which the conviction is obtained and in other jurisdictions. The number of convictions is often critical to the collateral consequences that an individual faces. For example, a defendant who has only one prior conviction will generally not be subject to sentencing under a habitual offender statute.

Furthermore, each criminal conviction itself represents a pronouncement by the State that the defendant has engaged in conduct warranting the moral condemnation of the community. Because a criminal conviction constitutes a formal judgment of condemnation by the community, each additional conviction imposes an additional stigma and causes additional damage to the defendant's reputation.

*Missouri v. Hunter,* 459 U.S. 359, 372–73, 103 S.Ct. 673, 74 L.Ed.2d 535 (Marshall, J., dissenting, joined by Stevens, J.) (internal quotation marks and citations omitted).

In *Lessary,* the defendant was charged in the circuit court with terroristic threatening and kidnaping (later amended to unlawful imprisonment), and in the family court with abuse of a family or household member. *See* 75 Haw. at 449, 865 P.2d at 152. Lessary allegedly went to his estranged wife's workplace and grabbed her by the hair and threw her into a wall. *See id.* at 448–49, 865 P.2d at 152. He then pointed a pair of scissors at

his wife and a co-worker, grabbed his wife by the front of her shirt, and dragged her to his jeep. *See id.* at 449, 865 P.2d at 152. When she refused to enter his jeep, Lessary allegedly threatened to stab her if she continued to refuse. *See id.* Lessary then drove to a canefield where they talked and he eventually let her drive him out after a few hours. *See id.*

In the family court, Lessary pled no contest to the abuse charge, but in the circuit court, Lessary pled not guilty to the felony charges and demanded a jury trial. *See id.* "Subsequently, Lessary moved to dismiss both charges on double jeopardy grounds...." *Id.* The circuit court dismissed the charges, and the prosecution appealed to this court. *See id.* at 450–51, 865 P.2d at 152–53.

The prosecution conceded the unlawful imprisonment charge, and, as to the terroristic threatening charge, this court applied the same conduct test and concluded that, "[b]ecause the conduct element of the Terroristic Threatening charge can be established by proof of acts independent of the acts alleged in the Abuse prosecution, the offenses are not based upon the 'same conduct.' " *Id.* at 461, 865 P.2d at 157. Thus, under *Lessary*, the determinative question is not whether the legislature intended to punish both crimes but whether the prosecution violated the same conduct test. *Lessary* described this test as follows:

> Under the "same conduct" test, prosecution of the Terroristic Threatening charge is barred *if the State, to establish the conduct element of Terroristic Threatening, will prove acts of the defendant on which the State relied to prove the conduct element of the Abuse offense for which Lessary had already been prosecuted.*

*Id.* (emphasis added). In the present cases, the prosecution proved the *same acts* to prove conduct under the firearms charge of HRS § 134–6, *i.e.,* use or threatened use of a firearm in commission of a separate felony, and the conduct element of murder. Therefore, under the same conduct test of *Lessary*, double jeopardy would bar dual convictions in the instant cases for murder and the use of a firearm in committing that murder. On

that basis, I would reverse the HRS § 134–6 convictions of both defendants.